### GENERAL BUSINESS MACHINES, Plaintiff,

v.

### NATIONAL SEMICONDUCTOR DATACHECKER/DTS, Defendant.

Civ. No. 84–C–0096G.

United States District Court, D. Utah, C.D.

July 8, 1987.

---

Chris Wangsgard, Richard C. Dibblee, Salt Lake City, Utah, for plaintiff.

Val R. Antczak and Julia C. Attwood, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

**J. THOMAS GREENE, District Judge.**

This matter came on regularly for hearing on June 19, 1987, on defendant's motion for partial summary judgment. Plaintiff was represented by Chris Wangsgard and Richard C. Dibblee and defendant was represented by Val R. Antczak and Julia C. Atwood. Plaintiff and defendant submitted memorandums of law and the court heard oral argument, after which the matter was taken under advisement. The court now being fully advised sets forth its Memorandum Decision and Order.

## BACKGROUND

This case arises out of a distribution agreement for the sale of cash registers and related equipment. According to the complaint, plaintiff first became involved in the sale of such equipment in the State of Utah in 1955. From 1972 through March of 1979 plaintiff was a nonexclusive distributor of electronic cash registers and related equipment manufactured by defendant's predecessor in interest—Data Terminal Systems, Inc. ("DTS"). In March 1979, plaintiff and DTS entered into an agreement entitled "Standard Dealer Sales Agreement" whereby plaintiff was given the *exclusive* right to sell equipment manufactured by DTS within the State of Utah. The agreement provided for automatic three year term renewals of the original three year agreement in the absence of termination for specified cause upon thirty days notice. Allegedly, on March 30, 1982, the agreement was extended in accordance with the renewal terms until March 30, 1985. On October 31, 1983, the exclusive distribution agreement was terminated by defendants.[1]

---

1. Apparently sometime in 1983 DTS through a stock sale merged into a company called N.S. Development Corporation, the immediate predecessor to defendant. It is alleged that both the merging company, N.S. Development Corporation, and defendant are wholly-owned subsidiaries of National Semiconductor Corporation.

Plaintiff asserts two causes of action. The first is for breach of the dealership agreement and the second for "Tortious Conduct including the Wrongful Termination of Plaintiff's Dealership." In the second cause of action, plaintiff alleges essentially that defendant "maliciously and in bad faith" terminated the dealership contract, that defendant was aware of reliance by plaintiff, and that defendant had a duty as a result of the relation between the parties to act in good faith and as a fiduciary with regard to continuation of plaintiff's exclusive dealership. Plaintiff also alleges that defendant falsely stated to plaintiff's customers that the termination was due to mismanagement. Finally, plaintiff alleges that defendant wrongfully induced plaintiff's employees to leave plaintiff's employ in order to work for other distributors of defendant's products. Defendant seeks summary judgment only on plaintiff's second cause of action.

## LEGAL ANALYSIS

### I. *Sufficiency of Tort Allegations*

Defendant argues that the second cause of action simply restates the first and that no tort is alleged, that the allegations of the second cause of action not plead in the first cause of action are not supported by the evidence, and that in any event there is no evidence of willful or malicious conduct to support a claim for punitive damages.

█ Defendant's argument with regard to whether a separate tort is pleaded is important because the parties agree that in Utah punitive damages cannot be awarded for breach of contract unless the breach amounts to an independent tort. *Highland Constr. Co. v. Union Pacific R.R.*, 683 P.2d 1042, 1049 (Utah 1984). In focusing upon the specific allegations of the second cause of action this court agrees with defendant that the allegations of misrepresentation to customers and wrongful solicitation of defendant's employees as set forth do not amount to a separate tort.

Plaintiff's second cause of action is styled "Wrongful Termination of Plaintiff's Dealership" and clearly has as its gravamen the termination of the dealership. However, the alleged acts of misrepresentation and wrongful solicitation occurred after the termination was complete, and plaintiff does not seek any additional damages as a result of that post-termination conduct. In those circumstances the allegations do not of themselves give rise to a separate tort claim and accompanying punitive damages. Counsel for plaintiff made it clear at the hearing that the post-termination actions are not meant to stand as the basis for a separate tort, but that such are believed to be of evidentiary significance as relating to the allegedly tortious pre-termination conduct.[2]

█ The primary basis for the tort claim contained in the second cause of action is breach of fiduciary duty. Defendant takes the position that no such fiduciary relation existed. In addition, defendant argues that if such a relation was created it was created within the four corners of the contract and would give rise only to contract damages. This court disagrees. The Restatement (Second) of Torts § 874 (1979) provides:

> One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation.

Comment b to § 874 further provides:

> A fiduciary who commits a breach of his duty as a fiduciary is guilty of tortious conduct to the person for whom he should act.... [T]he beneficiary is entitled to tort damages for harm caused by the breach of a duty arising from the relation, in accordance with the rules states in §§ 901–932.... [T]he liability is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation.

Section 908 of the Restatement, which is referred to specifically, provides for puni-

---

**2.** Defendant also attempted to show that the post termination tort allegations are not supported by the record. Since we do not regard the allegations as sufficient to support a separate tort in any event, the significance of whatever evidence there may be relating thereto can best await trial. Evidence supporting such allegations could be relevant at trial to demonstrate the alleged bad faith of defendant *at the time* the dealership was terminated.

tive damages. Further, courts agree that punitive damages are available for an egregious breach of a fiduciary duty. *See Newton v. Hornblower, Inc.*, 224 Kan. 506, 582 P.2d 1136, 1149 (1978); *Stone v. Martin*, 355 S.E.2d 255, 260 (N.C.Ct.App.1987); *Sloan v. Sloan*, 727 S.W.2d 418, 422–23 (Mo.Ct.App.1987); *Fisher v. Roper*, 727 S.W.2d 78, 82 (Tx.Ct.App.1987).

Utah case law seems likewise to recognize that breach of fiduciary duty is a cognizable tort separate from a contract cause of action. In *Beck v. Farmers Ins. Exchange*, 701 P.2d 795, 799 (Utah 1985) the Utah Supreme Court held that while tort remedies are available for breach of a third-party insurance agreement, no such remedy is available for breach of a first-party insurance agreement.[3] The fundamental distinction made by the court was that tort recovery becomes available when there exists a fiduciary duty:

> [B]ecause a third-party insurance contract obligates the insurer to defend the insured, the insurer incurs a *fiduciary duty* to its insured to protect the insured's interests as zealously as it would its own; consequently, a tort cause of action is recognized to remedy a violation of *that* duty.

*Id.* at 799 (emphasis added). Consistent with all of the above discussed law, this court holds that a tort action for breach of fiduciary duty with attendant tort remedies may be maintained if a fiduciary relation is established under all of the facts and circumstances in a given case.

█ This court concludes that a material issue of fact exists with regard to whether a fiduciary relation existed as a result of the dealership agreement and the course of dealing between the parties. In *Hal Taylor Associates v. Union American, Inc.*, 657 P.2d 743, 749 (Utah 1982) the Utah Supreme Court outlined in a general way how such a relationship may be created:

> A fiduciary or confidential relationship may be created by contract or by circumstances where equity will imply a higher duty in a relationship because the trusting party has been induced to relax the care and vigilance he would ordinarily exercise. In such a case, the evidence must demonstrate the placement of trust and reliance such that the nature of the relationship is clear.

Several courts and authorities have recognized that within appropriate circumstances a franchise relationship may give rise to fiduciary duties.[4] At oral argument defendant's counsel admitted that there is no meaningful distinction between the "dealership" involved here and the franchises involved in the cited caselaw. It was also

---

**3.** In Beck the court distinguished the two types of insurance agreements as follows:

> We use the term "first-party" to refer to an insurance agreement where the insurer agrees to pay claims submitted to it by the insured for losses suffered by the insured. The present case involves such a first-party situation. In contrast, a "third-party" situation is one where the insurer contracts to defend the insured against claims made by third parties against the insured and to pay any resulting liability, up to the specified dollar limit.

*Id.* at 798 n. 2.

**4.** *See Carter Equip. Co. v. John Deere Indus. Equip. Co.*, 681 F.2d 386, 390 (5th Cir.1982) (holding that a question of fact existed with regard to whether a franchise created a fiduciary relation); *Arnott v. Am. Oil Co.*, 609 F.2d 873, 881 (8th Cir.1979) (fiduciary relation existed with regard to arbitrary termination of franchise); *ABA Distributors, Inc. v. Adolph Coors Co.*, 542 F.Supp. 1272, 1286 (W.D.Mo.1982) (finding breach of fiduciary duty in the context of termination of franchise). These authorities, however, have been distinguished. In *Bain v.*

*Champlin Petroleum Co.*, 692 F.2d 43, 48 (8th Cir.1982) the court distinguishes *Arnott* as follows:

> What [*Arnott*] actually decided ... was simply that Amoco's *arbitrary termination* of Arnott's service station lease constituted a breach of Amoco's implied duty of "good faith and fair dealing." Inasmuch as the duty of "good faith and fair dealing" is inherent in every business relationship, it was unnecessary to the decision to label that duty as "fiduciary." In any event, Arnott does not stand for the proposition that the grant of a franchise of itself in all instances imposes on the franchisor *all* of the duties and responsibilities which traditionally pertain to a true fiduciary.

(emphasis in original). In *Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 354–55 (7th Cir.1982) the court noted that except in franchise termination cases the courts have refused to impose fiduciary obligations upon franchisors. The court also concluded that the fiduciary duty found to exist in *Arnott* and *ABA Distributors* amounts to no more than a duty of "good faith

recognized that we are here dealing with an alleged *exclusive* arrangement in the nature of a franchise. As a consequence this court concludes that whether within these facts a fiduciary relationship was created involves questions of fact which must await further development of the record.

II. *Evidence of Willfulness, Maliciousness or Reckless Indifference*

The Utah Supreme Court has stated that:
Before punitive damages may be awarded, the plaintiff must prove conduct that is willful and malicious ... or that manifests a knowing and reckless indifference and disregard toward the rights of others.

*Atkin Wright & Miles v. Mountain States Telephone and Telegraph Co.*, 709 P.2d 330, 337 (Utah 1985) (citations omitted). From the record presented, it is apparent that there are questions of fact with regard to whether defendant acted willfully, maliciously or with reckless indifference.

Based upon the foregoing, defendant's motion for summary judgment on plaintiff's second cause of action if denied. This Memorandum Decision and Order will suffice as the court's final action on this motion; no further Order need be prepared by counsel.

and fair dealing" in conformance with well-settled contact principles. In *Power Motive Corp. v. Mannesmann Denag Corp.*, 617 F.Supp. 1048, 1051–52 (D.Colo.1985) Judge Kane refused to find a fiduciary duty in a franchise relationship, and expressed the notion that a federal court sitting in diversity should not effect such a protection to franchises because it would amount to a "dramatic shift in state law."

Some commentators have concluded that a franchise relationship like other well recognized relationships may involve fiduciary duties. *See* H. Brown, *Franchising—A Fiduciary Relationship*, 49 Tex.L.Rev. 650 (1971):
Unfortunately, most fiduciary relationships have been so long established in the law that few occasions have arisen to analyze the basis of their inception. Consider, for instance, partners, attorney and client, employer and employee, trustee and beneficiary, and—more recently—officer, director, majority shareholder, and minority shareholder. It is submitted that in each of these examples the court have relied upon three propositions: the pervasive powers held by one party; the gross disparity of the parties in a complex transaction usually of long duration; and the rampant opportunities for abuse, particularly through clandestine self-preference.

*Id.* at 665. The author concludes:
Since the franchising relationship is [likewise] characterized by such pervasive power of control, this writer proposes the following principles: (1) When one has power to control another, a fiduciary obligation exists; (2) a fiduciary's duty is coextensive with his power to control; and (3) when the power to control another is abused by preference of self, equity will intervene.

*Id.* at 664; *see also* H. Brown & J. Cohen, *Franchise Equities*, 63 Mass.L.Rev. 109, 115 (1979).