Paul C. THOMPSON, et ux, et al, Plaintiffs,

v.

ATLANTIC RICHFIELD COMPANY, Defendant.

No. C85 2423M.

United States District Court, W.D. Washington.

Nov. 12, 1987.

Amended Judgment Nov. 13, 1987.

Howard E. Bundy, Bellevue, Wash., for plaintiffs.

Bruce M. Pym, Douglas C. Berry, Graham & Dunn, Seattle, Wash., for defendant.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KAY, Visiting District Judge.

Plaintiffs move for summary judgment on their claim for an accounting of funds paid to Atlantic Richfield Company (ARCO)

---

under a franchise agreement. ARCO moves for summary judgment dismissing plaintiff's claim for an accounting of the funds.

## I. FACTUAL BACKGROUND

Plaintiffs are present and former owners of ARCO am/pm Mini Market and gasoline franchises in the state of Washington. Pursuant to the franchise agreement with ARCO, plaintiffs have paid specified sums of money to ARCO which were to be used for advertising purposes. The franchise agreement provides:

> 7.04 Commencing with the month of January 1981 and continuing during the term hereof, Operator shall pay an advertising and promotion fee for each month equal to one percent (1%) of Operator's gross sales for such month ...
>
> \* \* \* \* \* \*
>
> 12.02 Beginning January 1, 1981, using funds collected from Operator pursuant to Section 7.04 and from other am/pm Operators, Company shall arrange or provide advertising and promotion which may, in Company's sole discretion, include local or regional advertising placed by Company, advertising copy and designs for use by Operator, handbills, flyers, brochures, signs, point of purchase or other materials. Company's obligation to provide the foregoing after January 1, 1981 shall be limited in cost to the amount of the advertising and promotion fees paid by am/pm operators. The entire amount of the advertising and promotion fee paid by Operator shall be used by Company for the expense of advertising and promotion at such times and in such manner as Company solely determines.

There is no dispute that ARCO has, in fact, spent far in excess of the amounts contributed by franchisees. ARCO provides information on a yearly basis to franchisees as to total amounts collected from franchisees and total amounts spent on am/pm advertising. ARCO has not, however, provided a detailed accounting of the advertising budget, and in the offering circulars provided to prospective franchisees, ARCO specifically states that it "does not plan to make accounting to franchisees of the advertising and promotion expenditures."

## II. ANALYSIS

In order to support their claim for an accounting of the advertising expenditures, Plaintiffs rely entirely on the existence of a trust relationship. They do not allege that the franchise agreement itself requires an accounting. There is also apparently no dispute that if, in fact, an express trust is held to have been created as to the advertising funds, ARCO has a duty to account for those funds under Washington law. Thus, resolution of the motions is a matter of determining whether in the context of this relationship, the franchise agreement gives rise to an express trust as to the advertising funds.

Plaintiffs argue that the franchise agreement creates an express trust because the funds were to be applied to a specific purpose, and as a function of the fiduciary relationship between a franchisor and franchisee. In support of this contention, plaintiffs quote language from. *Tucker v. Brown*, 199 Wash. 320, 92 P.2d 221 (1939):

> ... where a person has, or accepts, [property] with the express or implied understanding that he is not to hold it as his own absolute property, but to hold and apply it for certain specified purposes, an express trust exists.
>
> A person occupying a fiduciary relation, who has property deposited with him on the strength of such relation, is to be dealt with as a trustee of an express trust.

*Id.* at 331, 92 P.2d 221 (citations omitted). In *Tucker*, the court imposed a trust on funds given by a wealthy 70 year old woman to a businessman who had a close personal and professional involvement with her. The court refused to accept the claims that the funds were a gift, and declared that the funds were held in trust, based on the fiduciary relationship between the parties. ("It is difficult to believe that Mrs. Smith would have turned over all of her property to Mr. Brown, as she did,

without there being a fiduciary relationship between them." *Id.* at 331, 92 P.2d 221). The decision in *Tucker* was based on the relationship between the parties and not on an assertion that the funds given to Mr. Brown were to be applied to a particular purpose—there was no evidence of a particular purpose, and the court did not need to find one, since the fiduciary relationship was sufficient in itself to imply the existence of a trust.

There has been no showing in this case that there was any understanding between the parties that ARCO would not hold the funds as its own "absolute property," since the agreement does not give franchisees the right to object to the disposition of the advertising budget. Indeed, the advertising funds are spent for the benefit of ARCO as well as the franchisees.

Defendants cite a number of cases for the proposition that a franchisor is not in a fiduciary relationship with franchisees, and Plaintiffs admit in their reply brief that "the franchise relationship, as such, does not give rise to a fiduciary duty." Pl. reply br. p. 2; *Murphy v. White Hen Pantry Company,* 691 F.2d 350, 354 (7th Cir.1982); *Walker v. KFC Corp.,* 728 F.2d 1215, 1221, n. 5 (9th Cir.1984). Plaintiffs maintain, however, that although defendants have no duty to account for other fees charged, since the advertising fees are to be used for specified purposes, those fees are held in trust for the franchisees. Plaintiffs rely on *Tucker* in support of this assertion, but since the facts of that case indicate that *Tucker* was based on the existence of a fiduciary relationship, that case does not support the assertion that the mere fact of a contractual obligation to apply funds collected to a specified purpose implies a trust in the absence of any special relationship.

In determining whether a trust will be implied from an agreement, the "key element" is whether the parties intended a trust relationship rather than a contractual relationship. *In re Thornton,* 544 F.2d 1005 (9th Cir.1976). To support their assertion that there was intent to create a contract relationship rather than a trust arrangement in this situation, defendants list several facts in this case which are consist-

ent with a contract and inconsistent with a trust. First, there is no language in the agreement which indicates that a trust was intended. Second, the trust funds were not required to be segregated, and indeed, have not been. *See Kronisch v. Howard Sav. Inst.,* 161 N.J.Super. 592, 392 A.2d 178, 180 (1978) ("The fact that there is no provision for segregating the payments and that the payments were, indeed, not segregated provides strong evidence that no trust was intended.") Third, the franchise agreement does not provide for any beneficial interest in the advertising funds which would indicate that the funds were not paid over to ARCO as its own absolute property. Fourth, there is no reason for or purpose better served by creating a trust relationship as opposed to the simple contractual promise to spend a specified amount for advertising. Plaintiffs apparently are seeking the accounting of these funds so that they would be able to influence the way ARCO spends the advertising contributions. ("The underlying concern of [Plaintiffs] is that they ... have little or no influence over how those funds are spent." Exhibit A-1, certificate of Edward P. Picardo) Since, however, the franchise agreement explicitly denies franchisees any power to influence ARCO's advertising strategies, there is no reason to imply the existence of a trust rather than a simple contractual obligation.

The circumstances of this relationship imply that a trust would not have been intended by either ARCO or a franchisee. It would be unreasonable to infer an intent to create a trust on the part of franchisees when they have no ability to affect the disposition of the funds once they are paid, and the contractual relationship itself is sufficient to assure that the funds are used for the required purposes.

WHEREFORE, it is hereby ORDERED that the plaintiff's motion for summary judgment is DENIED. It is further ordered that defendant's motion for summary judgment is GRANTED.