**Hugh COLLINS, et al., Plaintiffs,**

v.

**INTERNATIONAL DAIRY QUEEN, et al., Defendants.**

**No. 5:94–95–4 (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

May 11, 1999.

William Camp Harris, John Elvis James, Lisa Neill–Beckmann, Macon GA, Dianne Green Smith, Lee Abrams, Chicago, IL, for plaintiffs.

Emmet J. Bondurant, II, Atlanta, GA, Benjamin M. Garland, F. Kennedy Hall, Macon, GA, William L. Killion, Quentin R. Wittrock, Troy A. Bader, Minneapolis, MN, for defendants.

### ORDER

OWENS, District Judge.

Defendants International Dairy Queen, Inc. ("IDQ") and American Dairy Queen Corp. ("ADQ") have moved for partial summary judgment dismissing plaintiffs' claims under Count VII of the Fourth Amended Complaint[1] for breach of fiduciary duty, and dismissing plaintiffs' claims for punitive damages. Plaintiff franchisees allege that defendants have breached a fiduciary duty to the franchisees to manage, in the best interests of the Dairy Queen system, an advertising fund to which the franchisees pay contractually required advertising fees.

■ A fiduciary has been partially defined as "a person having a duty, created by his undertaking, to act primarily for another's benefit in matters connected with such undertaking." Black's Law Dictionary 563 (5th Edition 1979). A "fiducia-

ry relation" is described as "aris[ing] whenever confidence is reposed on one side, and domination and influence result on the other.... Such relationship exists when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of the other." *Id.* at 564. Stated otherwise, a fiduciary relationship exists "when confidence is reposed on one side and there is resulting superiority and influence on the other." *Stark v. Equitable Life Assurance Society,* 205 Minn. 138, 145, 285 N.W. 466 (1939).

■ The vast majority of courts who have considered the issue have ruled that a franchisor-franchisee relationship, standing alone, does not create a fiduciary relationship. *See, e.g., Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 732 F.2d 480, 485 (5th Cir.1984); *O'Neal v. Burger Chef Systems, Inc.,* 860 F.2d 1341, 1349 (6th Cir.1988); *McGuirk Oil Co. v. Amoco Oil Co.,* 889 F.2d 734, 738 (6th Cir.1989); *Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.,* 970 F.2d 273, 280 (7th Cir.1992). Courts are in agreement that no fiduciary relationship results from a franchisor's management of an advertising fund. *Broussard v. Meineke Discount Muffler,* 155 F.3d 331 (4th Cir.1998); *Oil Express Nat'l, Inc. v. Burgstone,* 958 F.Supp. 366 (N.D.Ill.1997); *Thompson v. Atlantic Richfield Co.,* 673 F.Supp. 1026 (W.D.Wash.1987).

In a number of other cases cited by plaintiffs the existence of such relationships as franchisor-franchisee, dealer-distributor, or manufacturer-distributor were held not to preclude a finding of a fiduciary relationship under the specific fact situations given. None of these cases, however, dealt with a contractually required advertising fund. *See, e.g., A.S. Rampell, Inc. v. Hyster Co.,* 3 N.Y.2d 369, 165 N.Y.S.2d 475, 144 N.E.2d 371, 376 (N.Y.App.1957); *Zimmer–Masiello, Inc. v. Zimmer, Inc.,* 159 A.D.2d 363, 552 N.Y.S.2d 935, 937 (N.Y.1990); *General*

---

1. Count IX of the Fifth Amended Complaint.

Business Machines v. National Semiconductor Datachecker/DTS, 664 F.Supp. 1422, 1425 (D.Utah, 1987); and In re Sbarro Holding, Inc., 111 Misc.2d 910, 445 N.Y.S.2d 911, 913 (N.Y.1981). In Arnott v. American Oil Co., 609 F.2d 873 (8th Cir.1979), cert. denied, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980), the Eighth Circuit ruled that "[i]nherent in a franchise relationship is a fiduciary duty." Id., 609 F.2d at 881. However, the Eighth Circuit later distinguished Arnott by noting that it relied for its holding on South Dakota law. The Court noted that what is actually inherent in a franchise relationship is an implied duty 3 of good faith and fair dealing, but that a franchise agreement does not itself create fiduciary duties. Bain v. Champlin Petroleum Co., 692 F.2d 43, 48 (8th Cir.1982); see also Cambee's Furniture, Inc., v. Doughboy Recreational, Inc., 825 F.2d 167, 171 (8th Cir.1987). Carter Equipment Co. v. John Deere, 681 F.2d 386, 390 (5th Cir.1982), involved the termination of a dealership by a franchisor. The court relied on both Arnott and Mississippi law in holding that the trial court did not err in submitting to a jury the issue of whether a fiduciary relationship existed. See also Walker v. U–Haul of Mississippi, 734 F.2d 1068, 1075 (5th Cir.1984) (plaintiff claimed he was fraudulently induced by franchisor to surrender his service station and enter into a new lease).

A typical form of franchise agreement held by members of the plaintiff class in the instant case contains the following provision:

> Company and Licensee, together with other licensees of Company, shall cooperate in the promotion and advertising of approved products. To this end, Company reserves the right in its sole discretion to establish and organize advertising and promotion programs from time to time and Licensee agrees to participate in the cost and expense thereof by the payment to Company of an advertising fee as set forth in paragraph 9.5 hereof.

Despite this contractual provision granting defendants the sole discretion to manage the advertising fund, plaintiffs argue that the facts of the present case warrant its being included within the minority of cases in which courts refused to rule out the existence of a fiduciary relationship. Plaintiffs rely primarily on a letter written by Gary See, defendants' vice-president of marketing, to a group of franchisees in Nebraska on October 10, 1994. Mr. See wrote in that letter:

> In reference to your recent store meeting, it is important to clarify that any vote taken is in no way binding upon the corporation. Based on your respective store contracts, the corporation has a fiduciary responsibility and contractual obligation to each store to expend the advertising dollars and select the method and ad agency that does the best job for the benefit of the majority of stores. Having reviewed the CME/Cash Plus performance and the DMAs' [Dealer Marketing Area] sales, a decision to change agencies does not seem to be in the best interest of the stores.

As further evidence of a fiduciary relationship, plaintiffs state that at national and regional conventions and other meetings, representatives of defendants—an international publicly held corporation—have spoken repeatedly to franchisee—owners of small businesses—about their superior advertising expertise and training. These representatives have stated that the Dairy Queen franchise system is a "family," and that IDQ/ADQ will look out for their best interests and are accountable to them for management of the advertising fund. Plaintiffs state that many franchisees, in reliance on such representations, have made additional voluntary contributions to the advertising fund in excess of the amounts required by the franchise agreements.

Mr. See's use of the word "fiduciary" on one occasion to describe IDQ/ADQ's rela-

tionship with the franchisees is insufficient to establish that such a relationship existed in fact. As defendants point out, Mr. See is not a lawyer: his statement in the 1994 letter, standing by itself, represented only his one-time interpretation of the franchise contracts or his opinion as to the duties they created. There is no indication that Mr. See's pronouncement was the result of his specialized knowledge or legal analysis of the elements of a fiduciary relationship. In addition, his comments were directed only to a limited audience consisting of a small number of franchisees located in the state of Nebraska. Because these franchisees had already signed the franchise contracts obligating them to contribute to defendants' advertising fund, they could not have relied on Mr. See's statements in deciding whether to become franchisees. Mr. See's statements in the letter did not seek to impose additional obligations or duties on any franchisee, nor did the statements increase the "superiority and influence" of Dairy Queen to the detriment of the franchisees. *Stark, supra.*

Affidavits produced by plaintiffs state that from the mid–1970s to early 1990s defendants' representatives attended Dealer Marketing Area ("DMA") meetings at which they urged attending franchisees to make voluntary contributions in addition to their contractual requirement to pay into the advertising fund. At these DMA meetings the representatives told the franchisees that the Dairy Queen franchise system is a "family," that IDQ/ADQ has superior expertise and training in the area of advertisement and promotion, and that IDQ/ADQ would look out for their best interests and are accountable to them for management of the advertising fund. Plaintiffs state that in reliance on these representations, and at the request of defendants' representatives, many franchisees have made additional voluntary contributions to the advertising fund in excess of the amounts required by the franchise agreements.

As was the case with the comments in Mr. See's letter, the extra-contractual statements of defendants' representatives are not sufficient to create a fiduciary relationship between defendants and the franchisees by modifying the contractual provision which gives IDQ/ADQ sole discretion to establish and organize advertising and promotion programs. To the extent that some franchisees and third parties may have relied on the statements of defendants' representatives in making a decision to contribute additional voluntary dollars to the advertising fund, the court notes that the complaint herein refers only to contractually required advertising fees. Further, the class members include only those franchisees or Territory Operators who have made mandatory payments to the advertising fund. Consequently, any additional voluntary contributions made to the advertising fund by franchisees or other parties are not a subject of this lawsuit.

For the above reasons, defendants' motion for summary judgment dismissing plaintiffs' fiduciary duty claims is hereby **GRANTED.**