**W.M. PHILLIPS d/b/a Phillips Truck Stop, Plaintiff-Appellee, Cross-Appellant,**

v.

**CHEVRON U.S.A., INC., Defendant-Appellant, Cross-Appellee.**

No. 85–4613.

United States Court of Appeals, Fifth Circuit.

June 23, 1986.

Rehearing Denied Aug. 1, 1986.

John L. Low, IV, Watkins & Eager, John G. Corlew, Jackson, Miss., for defendant-appellant, cross-appellee.

Orma R. Smith, Jr., Smith, Downs, Ross, Trapp & Coleman, Wendell Trapp, Corinth, Miss., for plaintiff-appellee, cross-appellant.

Before REAVLEY, RANDALL and DAVIS, Circuit Judges.

REAVLEY, Circuit Judge:

Defendant Chevron Oil Company (Chevron) appeals the denial of its motion for a judgment notwithstanding the verdict, or, in the alternative, a new trial, made after a jury returned a verdict in favor of plaintiff William M. Phillips d/b/a Phillips Truck Stop (Phillips) on his claim of breach of fiduciary duty. We reverse and direct judgment in favor of Chevron.

## FACTS

Phillips owns and operates a truck stop in the extreme northeast corner of Mississippi. Standard Oil of Kentucky (now Chevron) and Phillips signed a ten-year dealer's contract in 1960. The contract did not provide for any discounts or rebates on the sale of diesel fuel to Phillips. However, because of high Mississippi taxes, Chevron paid Phillips a month-ending-allowance, or discount, based on the amount of diesel fuel he purchased, to help keep

Phillips competitive with truck stops in Tennessee and Alabama. Chevron paid the rebate until the late 1960's, when it contemplated reducing payment of its "discount" on diesel fuel purchased by Phillips. It ultimately rejected the idea, however, due to the possibility of losing Phillip's business.

As the time for the expiration of the 1960 contract drew near, Phillips and Chevron entered into negotiations for a new contract. A central feature of the negotiations was Phillips's desire to receive a more definite assurance that Chevron would not again attempt to take away his discount or rebate. Chevron agreed that, no matter what its posted "tank wagon price" was, Phillips would continue to receive his monthly rebate. Subsequently, however, when the actual contract was placed before Phillips, it stated only that "the buyer shall pay for goods without discount or deduction except as stated in this contract." After some discussion, a clause was added which allowed Phillips to terminate the contract on May of each year until the contract expired. Phillips then signed the contract (May, 1971).

Chevron continued its practice of paying the rebate until 1976. Chevron then began to reduce the rebate, until, by the spring of 1977, it had stopped all payments. In 1982, Phillips filed suit against Chevron alleging breach of contract. He later amended his complaint to include a claim of breach of fiduciary duty. Chevron brought various counterclaims.

At trial, Phillips, over the objection of Chevron, was allowed to present evidence of an oral agreement allegedly reached at the same time the 1971 dealer's contract was signed. According to Phillips, when he objected to the no discount clause in the contract, he was told by Mr. Wayne Milsted, Chevron's agent, that he was to continue to pay the posted price, but that he would also receive his rebate at the end of each month and that this would last for the term of the contract. Phillips was told that Chevron's price concessions could not be incorporated into the written contract be-cause of Chevron's fear of lawsuits by other dealers. Milsted, however, denied that he promised Phillips fixed discounts over the term of the dealer's contract. According to Milsted, the discounts were temporary in nature and were extended only to the extent necessary to meet the prices offered by Chevron's competitors. Although conceding that evidence of the oral agreement would be barred by the statute of frauds or the parol evidence rule to prove breach of contract, the trial court admitted the evidence to allow Phillips to prove breach of fiduciary duty.

At the end of the presentation of evidence, but before instructing the jury, the trial judge dismissed Phillips's claim for breach of contract, as well as some of Chevron's counterclaims. He allowed only Phillips's claim of breach of fiduciary duty and Chevron's claim that Phillips had violated the Lanham Act to go to the jury. The jury concluded that a fiduciary relationship existed between Chevron and Phillips and that Chevron had violated its fiduciary duties to Phillips. It awarded Phillips $100,894.00 in damages. The jury rejected Chevron's Lanham Act claim. The trial court denied Chevron's motion for judgment notwithstanding the verdict, or, in the alternative, a new trial, which denial Chevron now appeals. Phillips cross-appeals the dismissal of his claim for breach of contract.

## DISCUSSION

The parties argue the extent to which fiduciary law principles may govern the legal relationship between a franchisor and franchisee. This is a developing area of the law. Ever since the idea was first proposed by commentators, *see, e.g.,* Brown, *Franchising—A Fiduciary Relationship*, 49 Tex.L.Rev. 650 (1971), the courts have been at odds over whether a fiduciary relationship may exist between a franchisor and a franchisee. *Compare Arnott v. American Oil Co.*, 609 F.2d 873, 881 (8th Cir.), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1979) ("Inherent in a franchise relationship is a fidu-

ciary duty.") *with Picture Lake Campground, Inc. v. Holiday Inns, Inc.*, 497 F.Supp. 858, 869 (E.D.Va.1980) ("A franchise relationship is inherently a business relationship, not a fiduciary relationship.").

Assuming that such a relationship exists, courts have struggled to define the scope of the duty created by the relationship. Uncertainty has arisen as courts have attempted to apply fiduciary law principals to aspects of the franchise relationship traditionally governed by contract law. *Compare Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 485 (5th Cir. 1984) ("Except in cases of franchise termination, in which courts have refused to give literal effect to the language of the franchise agreement, courts have not imposed general fiduciary obligations upon franchisors.") *with Carter Equipment Co. v. John Deere Industrial Equipment Co.*, 681 F.2d 386, 392 n. 14 (5th Cir.1982) (franchisor has general obligation of dealing fairly and in good faith, but "activity in conformance with the terms of the contract," including termination, cannot constitute breach of fiduciary duty).

## I.

■ In this diversity case we apply Mississippi law. Chevron argues that under Mississippi law the fiduciary relationship may never arise as a result of a franchise arrangement. Chevron acknowledges, however, that it is asking us to overrule *Carter Equipment Co. v. John Deere Industrial Equipment Co.*, 681 F.2d 386 (5th Cir.1982), where we held to the contrary. *Carter Equipment*, a diversity case arising under Mississippi law, held that the existence of a fiduciary relationship between a franchisor and franchisee is a question of fact for the jury, guided by proper instructions from the court. While we may doubt the propriety of applying fiduciary law principles in the franchise context, as we stated in another case, "[w]e are .... bound by our decision in *Carter Equip-*

ment unless the Mississippi Supreme Court repudiates its interpretation of Mississippi law, or unless the court sitting en banc overrules it." *Walker v. U-Haul Co. of Mississippi*, 734 F.2d 1068, 1075 n. 29 (5th Cir.1984). Neither eventuality has happened, and *Carter Equipment* controls.

## II.

Chevron also argues that, even assuming that a fiduciary relationship may be found to exist between a franchisor and franchisee, the franchisor breaches any fiduciary duty it owes the franchisee only by arbitrarily terminating the franchise agreement. Accordingly, since there was no termination of the franchise agreement in this case, Chevron argues that Phillips had no claim for breach of fiduciary duty. Chevron, however, misinterprets the dictates of *Carter Equipment.*

■ *Carter Equipment* concluded that under Mississippi law "a fiduciary has the generalized obligation of dealing fairly and in good faith." [1] 681 F.2d at 392. As we stated,

> the law requires that neither party exert undue influence or pressure upon the other, take selfish advantage of his trust or deal with the subject matter of the trust in such a way as to benefit himself or prejudice the other except in the exercise of the utmost good faith and with the full knowledge and consent of the other person involved.

*Id.*, quoting *Arnott v. American Oil Co.*, 609 F.2d 873, 881 n. 6 (8th Cir.), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1979). This generalized duty of good faith and fair dealing is, however, limited by the terms of the franchise agreement. "Unless the contractual terms are unconscionable, illegal, or violative of public policy, fiduciaries, as a practical matter, acknowledge that activity in conformance with the terms of the contract cannot amount to misconduct that constitutes a

---

1. As *Carter Equipment* noted, "[g]ood faith and fair dealing are not customarily equated with a fiduciary duty." 681 F.2d at 392 n. 12. The court concluded, however, that "Mississippi ... seems to merge the two concepts, at least in a broad sense." *Id.*

breach of a fiduciary duty." *Carter Equipment,* 681 F.2d at 392 n. 14.

■ Chevron's attempt to limit fiduciary cases in the franchise context to termination cases clearly misses the entire thrust of *Carter Equipment.* The generalized obligation of dealing fairly and in good faith stated by *Carter Equipment* was not limited to termination of the franchise agreement. On the other hand, unlike some courts, *see, e.g., Arnott v. American Oil Co.,* 609 F.2d 873 (8th Cir.), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1979), *Carter Equipment* would allow arbitrary termination of a franchise relationship if in accord with the terms of a valid franchise agreement. *See Walker,* 734 F.2d at 1075. We are bound by *Carter Equipment*'s analysis.

### III.

This is not, however, a case where an actionable breach of fiduciary duty has been proved. Under the analysis we set forth in *Walker v. U-Haul Co. of Mississippi,* 734 F.2d 1068, 1075 (5th Cir.1984), we sustain Chevron's point that the evidence does not support a finding that Chevron breached a fiduciary duty owed to Phillips.

In *Walker,* a diversity case applying Mississippi law, we applied the principles of fiduciary duty set forth in *Carter Equipment* to circumstances nearly identical to those in this case. Walker, the franchisee, had alleged that U-Haul, the franchisor, made a certain oral promise when the franchise agreement was signed. He further alleged that U-Haul later broke its promise and then terminated the franchise agreement. We concluded first that Walker had no breach of fiduciary duty claim for termination of the franchise. The franchise agreement allowed U-Haul to terminate without cause, and, under footnote 14 of *Carter Equipment,* "claims for breach of fiduciary duty grounded on conduct autho-

rized by the provisions of a contract" are ordinarily not actionable. *Walker,* 734 F.2d at 1075. Second, we noted that the trial court had determined that none of the exceptions to this general rule stated in footnote 14, such as unconscionability or illegality, were present. Finally, however, we reversed the grant of summary judgment in favor of U-Haul to allow Walker to prove that U-Haul breached its fiduciary duty to him by fraudulently inducing him to enter into the franchise contract with its oral promise.[2]

■ In this case, the contract clearly provided that Chevron was not obligated to provide Phillips any discounts on purchases of diesel. Thus, Chevron's decision to stop allowing Phillips the discount was well within its rights as governed by the contract, and, under *Carter Equipment,* cannot constitute a breach of fiduciary duty. Moreover, there was no evidence that the contract itself was unconscionable, illegal or violative of public policy. The evidence presented at trial clearly showed that Phillips was under no pressure to sign the contract; there was no unequal bargaining power. Phillips himself presented evidence that Chevron was competing with other oil companies for his business rather than vice-versa. Indeed, Phillips was able to insert a clause in the contract allowing him to terminate the contract. Nowhere has Phillips argued that Chevron's action prevented him from exercising this right. We can only conclude that Phillips's decision to continue the franchise relationship after Chevron discontinued the discounts was made with his own interests in mind. We see no unconscionability, illegality or violation of public policy in such circumstances.

■ Finally, there was no evidence that in making the alleged oral promise Chevron acted inconsistently with its fiduciary duty to Phillips. Contrary to Chevron's assertion, evidence of the oral promise alleged in this case was admissible to enable Phillips to prove that Chevron

---

**2.** Significantly, Walker's suit did not seek to enforce U-Haul's promise; rather, he sought damages for the expense he incurred in entering the relationship because of the promise. The

concept of fiduciary duty cannot be used to enforce promises unenforceable under contract law.

breached its fiduciary duty to him by fraudulently inducing him to sign the dealer's contract. *See Walker,* 734 F.2d at 1075–76. Under both *Walker* and *Carter Equipment,* however, proof of breach of fiduciary duty requires at a minimum proof of bad faith. Proof of bad faith, in the context of a claim of fraudulent inducement, requires more than evidence of the promise alone; it also requires proof of scienter. That is, it requires proof of an intent to deceive or to mislead at the time the promise was made. *See* W. Prosser, *The Law of Torts* § 107, at 700 (4th ed. 1971).

 In *Walker,* because we were considering a motion for summary judgment, we accepted the plaintiff's allegations of scienter as true, leaving proof of the allegations for trial. Here, given the opportunity to present evidence at trial that Chevron acted in bad faith, Phillips failed to present any evidence that Chevron intended to deceive him. Indeed, Phillips himself disavowed at trial any suggestion that Chevron agents intended to mislead him when promises were made to continue paying the discounts. The complete lack of evidence of scienter in this case means that no issue of fraud or bad faith was raised, and it follows that no issue of breach of fiduciary duty was made.

## IV.

Phillips asserts on cross-appeal that the trial court erred by dismissing his claim for breach of contract. We disagree. Paragraph One of the contract stated that Phillips agreed to purchase from 828,000 to 1,821,600 gallons of "Chevron Diesel Fuel." Paragraph Six provided that "Buyer shall pay for goods without discount or deduction except as stated in the contract." The contract did not provide for any discounts or deductions. Since the written contract clearly provided that Phillips's purchase of diesel fuel would be without discounts, Phillips's breach of contract claim was viable only if Chevron's alleged oral promise to continue allowing the discounts could serve as the basis for the claim. It could not do so, however, under either the statute of frauds or the parol evidence rule.

Mississippi's statute of frauds provides that "any agreement which is not to be performed within the space of fifteen months from the making thereof" shall not be enforceable unless the agreement is in writing. Miss.Code Ann. § 15–3–1(d) (1972). Any alleged promise to continue allowing discounts for the life of a ten-year contract certainly falls within the statute. Mississippi's parol evidence rule provides that the terms of a written contract which expressly states that the contract contains the entire agreement of the parties may not be contradicted by evidence of a contemporaneous oral agreement. Miss.Code Ann. § 75–2–202 (1972); *see General Plumbing & Heating, Inc. v. American Air Filter Co., Inc.,* 696 F.2d 375, 378 (5th Cir.1983). Since the contract states that it contains the entire agreement of the parties and since the alleged oral promise would contradict the express terms of the contract, evidence of the promise may not be used to support a claim for breach of contract. Phillips had no basis for his claim of breach of contract, and the trial court properly dismissed the claim.

The judgment of the district court is reversed; the cause is remanded to that court with directions that judgment be entered in favor of defendant.

REVERSED.