**NAVISTAR INTERNATIONAL TRANS-
PORTATION CORPORATION,**
Appellant,

v.

**CRIM TRUCK & TRACTOR CO., Travis
Crim and Tim Farley, Appellees.**

No. 9753.

Court of Appeals of Texas,
Texarkana.

May 22, 1990.

Rehearing Denied June 20, 1990.

Stephen F. Fink, Thompson & Knight, Dallas, for appellant.

Ron Adkison, Wellborn, Houston, Adkison, Mann, Sadler & Colley, Henderson, for appellees.

BLEIL, Justice.

Navistar International Transportation Corporation appeals from a judgment rendered in favor of Crim Truck & Tractor Company, Travis Crim and Tim Farley, the plaintiffs below. The plaintiffs sued Navistar for breach of a franchise agreement, breach of fiduciary duty and conspiracy to convert the plaintiffs' assets to the benefit of Navistar. The jury found in favor of the plaintiffs on all questions and fixed actual damages in the amount of $1,600,-000.00, and exemplary damages in the amount of $1,750,000.00. We conclude that there are several errors which require reversal.

We first address Navistar's contentions involving breach of a fiduciary duty. Navistar contends that as a matter of law no fiduciary relationship existed between the parties, and that if such a relationship could have existed, the evidence was insufficient to prove that it did exist or that it was thereafter willfully breached by Navistar.

A relationship between Navistar's predecessor, International Harvester, and Crim Truck & Tractor began in 1943 and continued until Navistar terminated that relationship on April 1, 1985. Crim Truck & Tractor was the distributor in Henderson for Navistar products. Travis Crim testified that he and his father had always done the things requested or suggested by Navistar, from building design to computer equipment. Travis Crim also testified that he trusted Navistar, based in part on the term of the franchise agreement which provided for "mutual confidence and trust," and that he would not have otherwise entered into the agreement in 1979.

Since a formal fiduciary relationship does not exist between the parties, we must determine whether one has been otherwise created. A fiduciary relationship may arise not only from a technical relationship, but also when a person occupies a position of peculiar confidence toward another, *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 561 n. 3 (1962). A fiduciary relationship is based upon fair dealing and good faith rather than any legal obligation. *Kinzbach Tool Co. v. Corbett–Wallace Corporation*, 138 Tex. 565, 160 S.W.2d 509, 512 (1942). It includes those informal relationships where one person trusts in or relies on the other, whether the relationship is social, domestic, or personal. *Texas Bank and Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex.1980); *Fitz–Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256 (1951). However, the fact that one businessman

trusts another and relies on a promise to carry out a contract does not create a fiduciary relationship. *Consolidated Gas & Equipment Co. v. Thompson,* 405 S.W.2d 333, 337 (Tex.1966). Ordinarily, when a fiduciary relationship has been held to exist, the parties were acting as partners or joint venturers, thus creating a fiduciary relationship as a matter of law. *Gaines v. Hamman,* 358 S.W.2d at 560; *Fitz–Gerald v. Hull,* 237 S.W.2d at 264; *Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786 (1938); *O'Shea v. Coronado Transmission Co.,* 656 S.W.2d 557, 559 (Tex.App.–Corpus Christi 1983, writ ref'd n.r.e.). A fiduciary relationship may also arise informally from moral, social, domestic, or purely personal relationships if confidentiality, trust, and reliance are present. *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1962); *Gonzalez v. City of Mission,* 620 S.W.2d 918, 921 (Tex. Civ.App.–Corpus Christi 1981, no writ). The relationship between a franchisor and a franchisee, as here, is not a formal fiduciary relationship. Likewise, the relationship between Navistar and the plaintiffs is not one of a moral, social, domestic or purely personal relationship beyond that created through the contract itself.

■ The fact that a cordial arm's-length relationship had continued for a long period does not, without more, create a fiduciary relationship between the parties. Under the present circumstances, we hold that no informal fiduciary relationship between Navistar, the franchisor, and Crim Truck & Tractor, the franchisee, was created.

Our further review of the evidence reveals that the evidence is insufficient under the review standard of *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986), and *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951), to support a finding that such a duty existed. If it be determined that we are wrong in holding that as a matter of law no such relationship existed, we further hold that insufficient evidence exists to show a fiduciary relationship between Navistar and the plaintiffs. Thus, recovery based upon the tort of breach of fiduciary duty cannot stand.

■ We now turn to the arguments concerning the jury findings based upon breach of contract. Navistar contends that the trial court erred in submitting a jury question asking whether Navistar breached its contract with the plaintiffs, because the contract was not ambiguous. It is proper to ask a jury to determine whether the evidence proves that a party breached the terms of the contract. *Briargrove Shopping Center v. Vilar,* 647 S.W.2d 329, 333 (Tex.App.–Houston [1st Dist.] 1982, no writ); *Cannan v. Varn,* 591 S.W.2d 583 (Tex.Civ.App.–Corpus Christi 1979, writ ref'd n.r.e.). The trial court did not err in submitting a question asking whether Navistar breached the contract.

■ Navistar also maintains that there is no evidence to support the submission of a question to the jury asking whether Navistar had breached its contract. In reviewing a no evidence question, we consider only the evidence tending to support the finding, view it in the light most favorable to the finding, give effect to all reasonable inferences therefrom, and disregard all evidence to the contrary. *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400 (Tex.1981). The franchise agreement provides that Navistar could unilaterally terminate the franchise only for specified reasons. Navistar determined in 1984 that in order to effectively compete, all of its dealerships needed to be linked by computer. The proposed system was called the Dealer Communication Network, and Navistar informed all of its dealers that execution of an agreement to join the network was mandatory. Crim did not sign the agreement. Navistar then informed Crim Truck & Tractor that it considered it to be in anticipatory breach of the franchise agreement because it did not attend the meeting at which the network had been explained and had not signed and returned the agreement. Navistar argues that Crim was in anticipatory breach because without the system it could not comply with parts and equipment order requirements, warranty information transfer, and inventory control.

However, a representative of Navistar testified that at the time of trial the computer system was still only functioning at about fifty percent of its dealerships and that the old written forms were still in widespread use. Other dealers still using paper forms had not been terminated. At least four years after termination Crim could still have fulfilled the requirements of the contract without the computer system. Crim had therefore not placed itself in such a position as to be unable to perform the agreement, and Navistar unilaterally terminated the contract without cause. Some evidence supports a finding that Navistar breached the contract by terminating Crim Truck & Tractor.

Navistar further asserts that there is no evidence, or insufficient evidence, to support the jury's findings on damages resulting from the breach. The jury provided damages for loss of profits, loss of investment, and loss of money from sale of the franchise after considering the difference between the value of the business with and without the franchise.

■ In order to recover for lost profits, it is not necessary that the loss be susceptible to an exact calculation. *Southwest Battery Corporation v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1098 (1938). It is sufficient that the amount of loss be shown by competent evidence with reasonable certainty. Where there is an established business, pre-existing profits may be used to prove the amount of loss with reasonable certainty. In addition, while calculating the loss and profit, the normal increase in the business which might have been expected in the light of past developments and existing conditions may also be considered. *White v. Southwestern Bell Telephone Co.*, 651 S.W.2d 260, 262 (Tex. 1983).

The jury was asked to find what amount of damages, if any, were proximately caused by the breach. It found $150,000.00 damages for lost profits from the time of breach until trial.

■ Travis Crim testified that the company had net profits of $88,000.00 in 1982 and unspecified profits in 1983 and 1984.

His partner, Tim Farley, testified that the overall company, which included the franchise operation, an agricultural operation, and a wood-hauling operation, earned a profit of approximately $200,000.00. Farley testified that the profit was at least $100,000.00. Navistar argues that the charge presented to the jury improperly allowed it to consider profits obtained from portions of the business other than the truck franchise. Farley's and Crim's testimony goes generally to the profits generated by the entire business entity. No evidence shows the amount of profit earned exclusively by the truck franchise in the preceding years. While there is some evidence which could be construed to apply only to the franchise, we find the evidence insufficient to prove the loss of profits with reasonable certainty.

■ Navistar further contends that the evidence is legally and factually insufficient to support the jury's finding that the value of the business had been diminished by $750,000.00. Travis Crim testified that in his opinion the business was valued at $1,500,000.00, with approximately $300,000.00 to $350,000.00 of that amount going just to the buildings and real estate. However, there is no testimony about the value of the company after the franchise was terminated. It might be assumed that its value as an operating business was negligible, because at that time the only two business operations being conducted by Crim Truck & Tractor were the operation of the truck franchise and an apparently unconnected wood-hauling business described as a "break even" operation. The agricultural portion of the business had previously been sold. Thus, there is testimony of the value of the business before the franchise was terminated, and of the residual value of the buildings and land after termination. There is, however, no evidence of the value of the remaining wood-hauling business. Again, we find the evidence insufficient to support the jury's finding of $750,000.00 damages for the diminishment of the value of the business.

Navistar also urges that no evidence or insufficient evidence supports the jury finding that Navistar made misrepresentations to Crim and that the loss of investment caused by these misrepresentations caused $500,000.00 in damages. The representations complained of concern specific terms of the contract. This is a situation involving a failure to perform a contract, which is only a breach of contract and not a tort unless the duty imposed by the contract is one which is also imposed by law. *International Printing Pressmen and Assistants' Union v. Smith,* 145 Tex. 399, 198 S.W.2d 729 (1946); *see Philipp Brothers, Inc. v. Oil Country Specialists, Ltd.,* 32 Tex.Sup.Ct.J. 449, 450 (June 7, 1989); W. Keeton, *Prosser and Keeton on the Law of Torts* § 92 at 655–61 (5th ed. 1984). Thus, the plaintiffs are precluded from recovering tort damages for what is essentially a breach of contract cause of action. Our resolution of this issue and the issue concerning Navistar's breach of fiduciary duty necessarily eliminates any basis for recovery of damages for mental anguish, as those damages are predicated upon an affirmative finding that Navistar had engaged in one of these two acts.

Navistar additionally contends that the cause was improperly brought in district court because an exclusive administrative remedy for any dealer/manufacturer disagreement is mandated by the Texas Motor Vehicle Commission Code (Tex.Rev.Civ. Stat.Ann. art. 4413(36) (Vernon Supp. 1990)). The present statute provides that its remedies are exclusive and that common law rights are generally preempted. The statute in existence at the time this suit was brought had no such restriction.

Generally, when a statute gives a remedy, it is cumulative of the common law remedy and not exclusive unless the statute either expressly or impliedly negates the right to the common law remedy.

*Indemnity Ins. Co. v. South Texas Lumber Co.,* 29 S.W.2d 1009 (Tex.Comm'n App. 1930, judgmt adopted); 1 Tex.Jur.3d *Actions* § 28 (1979); 67 Tex.Jur.3d *Statutes* § 7 (1989). The Code did not expressly provide that its remedy was exclusive. This suit was properly brought in district court.

The judgment of the trial court is reversed. Judgment is here rendered that Crim take nothing by virtue of its tort claims, and the cause is remanded for a new trial based upon the breach of contract aspect of the suit.

GRANT, Justice, dissenting.

I respectfully dissent.

For the first time in the jurisprudence of this state, the question must be determined as to whether a franchise relationship constitutes a fiduciary relationship. Texas has long held that a fiduciary relationship exists as a matter of law between parties acting as partners,[1] between parties who are joint venturers,[2] between principal and agent,[3] between boards of directors and corporations,[4] and in informal relationships whenever one party trusts and relies on another.[5] When finding a fiduciary relationship in an informal relationship, the courts rely on fair dealing and good faith rather than a legal obligation as its basis. *Kinzbach Tool Co. v. Corbett–Wallace Corporation,* 138 Tex. 565, 160 S.W.2d 509, 512 (1942).

Harold Brown, in an article entitled "Franchising—A Fiduciary Relationship" in 49 Texas L.Rev. 650 (1971), states the following:

Since the franchising relationship is characterized by such pervasive power of control, this writer proposes the following principles: (1) When one has the power to control another, a fiduciary obli-

1. *Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786 (1938).

2. *Texas Bank and Trust Co. v. Moore,* 595 S.W.2d 502 (Tex.1980).

3. *Scott v. Weaver,* 2 S.W.2d 870 (Tex.Civ.App.– Austin 1927, writ dism'd).

4. *Tenison v. Patton,* 95 Tex. 284, 67 S.W. 92 (1902).

5. *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557, 561 (1962).

gation exists; (2) a fiduciary's duty is coextensive with his power to control; and (3) when the power to control another is abused by preference of self, equity will intervene.

While no Texas court has examined whether the relationship between a franchisor and a franchisee should be considered fiduciary in nature, there have been a number of significant decisions outside of this jurisdiction in which the courts have concluded that a fiduciary relationship does exist between participants in a franchise agreement. In the case of *Arnott v. American Oil Co.*, 609 F.2d 873 (8th Cir. 1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980), the court stated its policy reasons for considering such a relationship inherently fiduciary in nature:

> A franchisee, unlike a tenant pursuing his own interests, builds the goodwill of his own business and the goodwill of the franchisor. [Citation omitted.] This facet of the relationship has led to the recognition that the franchise relationship imposes a duty upon franchisors not to act arbitrarily in terminating the franchise.

The court further noted that in a franchise relationship both parties have a common interest in profit from the activities of the other.

In a later case, *Bain v. Champlin Petroleum*, 692 F.2d 43, 48 (8th Cir.1982), the same court held that *Arnott* did not stand for the proposition that the grant of franchise of itself imposes on the franchisor in every instance all the duties or responsibilities which traditionally pertain to a true fiduciary. In the case of *Cambee's Furniture v. Doughboy Recreational, Inc.*, 825 F.2d 167 (8th Cir.1987), the court went on to say that a franchise or other ordinary business relationship does not alone create fiduciary duties. The court, in its analysis which involved the termination of a franchise arrangement allegedly without good cause, found that obligations of good faith and fair dealing prevented the defendant from terminating the franchise agreement without cause.

The Fifth Circuit Court of Appeals considered much the same situation in *Carter Equipment Company v. John Deere Industrial Equipment Company*, 681 F.2d 386 (5th Cir.1982). The court found that Mississippi law recognized the existence of a fiduciary relationship as a possible outgrowth of a franchise agreement and observed that at least one of the facts that might distinguish a franchise agreement from a typical contractual arrangement is that it involves a functioning and continuing enterprise. In a later case, *Phillips v. Chevron U.S.A., Inc.*, 792 F.2d 521 (5th Cir.1986), the court determined that in applying Mississippi law, the existence of the fiduciary relationship under a franchise agreement was a question of fact for the jury to determine.

A number of courts have held that in appropriate circumstances, a franchise relationship may in fact give rise to fiduciary duties when there is a bad faith attempt to terminate a dealership contract. *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480 (5th Cir.1984) (applying Louisiana law); *Murphy v. White Hen Pantry Co.*, 691 F.2d 350 (7th Cir.1982), and cases cited therein; *General Business Machines v. National Semiconductor Datachecker/DTS*, 664 F.Supp. 1422 (D.C.Utah 1987). There is no reported case from any jurisdiction that imposes a fiduciary relationship on the parties during the arm's-length negotiation of the terms of a franchise agreement. Lewis, *Franchise Litigation in Texas: Analyzing Claims and Defenses*, 19 St. Mary's L.J. 663 (1988).

When a franchising relationship exists, good faith and fair dealing should be required to terminate a dealership contract. This requirement could be made by considering the franchise relationship to be a fiduciary relationship for purposes of the termination of a dealership contract, or the good faith and fair dealing duty could be required without classifying this relationship as fiduciary in nature.

In the earlier Texas case law, a clear dichotomy is recognized between a "technical fiduciary" relationship and a "confidential" relationship. *Fitz–Gerald v. Hull,*

150 Tex. 39, 237 S.W.2d 256 (1951); *Johnson v. Peckham*, 132 Tex. 148, 120 S.W.2d 786, 787–88 (1938). These concepts have since been merged into the concept of fiduciary relationships applied today. The initial determination of whether a technical fiduciary relationship may, as a matter of law, exist in a given situation is for the court to determine. *Johnson v. Peckham*, 120 S.W.2d 786. Thus, if such relationship exists as a matter of law, the inquiry ends. If, however, the relationship *may* exist in a given situation, its actual existence as an informal fiduciary relationship or a "confidential relationship" is a question of fact for the jury to determine. *MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d 334 (1944); *Page Airways, Inc. v. Associated Radio Service Co.*, 545 S.W.2d 184, 192 (Tex.Civ.App.–San Antonio 1976, writ ref'd n.r.e.).

In the present case, the jury found the existence of a fiduciary relationship. The evidence showed that the relationship between Navistar's predecessor, International Harvester, and the Crim family began in 1943 and continued until the termination which is the subject of this suit. Crim Truck & Tractor had been the sole distributor in Henderson for Navistar products for forty-two years, and the purpose of the franchise agreement was to further the common goals of both the franchisor and franchisee. Crim testified that he and his father had always done the things requested by the franchisor, including building a prototype building and changing locations at the franchisor's suggestion. Crim further testified that Crim had taken Navistar's recommendation and purchased two computer systems several years earlier. He testified that he trusted the franchisor, partly because of the term of the franchise agreement which provided for "mutual confidence and trust." There was also evidence that Crim Truck & Tractor has been held out by Navistar to be an excellent dealership with whom they hoped to continue a long and fruitful relationship. By the terms of the franchise agreement, Navistar was in a superior position to Crim, and Crim was compelled to rely upon its dictates and policies.

There was sufficient evidence in this case to show a fiduciary relationship.