No. 04-99-00891-CV


FORD MOTOR COMPANY,


Appellant


v.


Hanan BUTNARU and Gil Butnaru,


Appellees


From the 63rd Judicial District Court, Val Verde County, Texas


Trial Court No. 23028


Honorable George M. Thurmond, Judge Presiding


Opinion by: Tom Rickhoff, Justice 

Sitting: Tom Rickhoff, Justice 

 Paul W. Green, Justice 

 Karen Angelini, Justice 

Delivered and Filed: March 8, 2000

TEMPORARY INJUNCTION DISSOLVED; DISMISSED IN PART; REVERSED AND
REMANDED IN PART

 In this appeal, Ford Motor Company attacks a temporary injunction that prevents it from
exercising a right of first refusal to buy one of its dealerships. The injunction was entered at the
urging of Hanan and Gil Butnaru, who have contracted to buy the dealership. Ford argues the trial
court lacked jurisdiction to grant the injunction because the Butnarus' underlying claims are within
the exclusive jurisdiction of the Texas Motor Vehicle Board. Alternatively, Ford argues the trial
court abused its discretion in granting the injunction because the Butnarus failed to establish the
inadequacy of their legal remedy and a probable right of recovery. We conclude that the trial court
lacks jurisdiction over the Butnarus' claims arising from the Texas Motor Vehicle Commission Code.
We also conclude that the Butnarus failed to establish that a legal remedy would be inadequate to
vindicate their remaining claims. Accordingly, we will dissolve the temporary injunction, dismiss the
claims over which the trial court lacks jurisdiction, and remand the remaining claims for further
proceedings. 

Factual and Procedural Background


 Graf Ford, Lincoln, Mercury, Inc. (Graf Ford) operates a dealership that is authorized by Ford
to sell Ford, Lincoln, and Mercury vehicles in Del Rio, Texas. The dealership agreement provides
that if Graf Ford proposes a transfer of the dealership, Ford shall have a right of first refusal to
purchase the dealership on the same terms and conditions agreed to by the proposed buyer,
"regardless of whether the proposed buyer is qualified to be a dealer." Martin Graf is the sole
shareholder of Graf Ford. The dealership is located on property owned by Graf and J.M. Barton. 

 Hanan and Gil Butnaru entered into purchase and sale agreements with Graf Ford to buy the
dealership and with Graf and Barton to buy the real property upon which the dealership is located.
Both agreements provide that the parties' obligations to perform are conditioned upon approval by
Ford of Hanan Butnaru as an authorized dealer. Although the right of first refusal is not mentioned
in the agreements, Graf told Hanan Butnaru about its existence. Graf and Butnaru were apparently
not concerned about the right of first refusal because they wrongly assumed that Ford would accept
Butnaru and would not be interested in operating a dealership in Del Rio, Texas. Butnaru also
believed Texas law prohibited Ford from owning a dealership. 

 On September 5, 1999, Graf informed Ford that he intended to sell the dealership to the
Butnarus. On October 7, 1999, Ford informed Graf and the Butnarus that it intended to exercise its
right of first refusal and offered to pay the Butnarus' reasonable expenses incurred in negotiating the
purchase and sale agreements. On the same day, Ford assigned its right of first refusal to an existing
Ford dealer. Ford and Graf subsequently agreed that Ford would indemnify Graf against damages
arising from Ford's exercise of the right of first refusal and Graf would cooperate with Ford in
defending any action challenging the right of first refusal.

 The Butnarus sued Graf Ford, Graf, Barton, and Ford, alleging that Graf Ford, Graf, and
Barton were breaching or were about to breach the purchase and sale agreements and that Ford was
tortiously interfering with the agreements. They also sought a declaration that the right of first refusal
is unenforceable and a declaration of the parties' rights and obligations under the purchase and sale
agreements. The Butnarus requested a temporary injunction to prevent the dealership from being sold
during the pendency of the suit. Ford opposed the request for a temporary injunction and also filed
a plea to the jurisdiction. The trial court determined that it had jurisdiction and granted the temporary
injunction. 

Jurisdiction



 The Texas Motor Vehicle Commission Code


 Ford's jurisdictional arguments are based on the Texas Motor Vehicle Commission Code (the
Act). See Tex. Rev. Civ. Stat. Ann. art. 4413(36) (Vernon 1976 & Supp. 1999). Before discussing
Ford's arguments, we will review the portions of the Act that will be relevant to the discussion. 

 The stated purpose of the Act is to "insure a sound system of distributing and selling motor
vehicles through licensing and regulating manufacturers, distributors, converters, and dealers of those
vehicles, and enforcing this Act as to other persons, in order to provide for compliance with
manufacturer's warranties, and to prevent frauds, unfair practices, discriminations, impositions, and
other abuses of our citizens." Id. § 1.02 (Vernon Supp. 1999). The Act "shall be liberally construed"
to effect this purpose. Id. § 1.04. An agreement to waive the terms of the Act is void and
unenforceable. See id. 

 The Act creates the Texas Motor Vehicle Board, see id. § 2.01, and confers upon it "the
general and original power and jurisdiction to regulate all aspects of the distribution, sale, and leasing
of motor vehicles." Id. § 3.01(a). The Act also provides that "[u]nless otherwise specifically
provided by Texas law not in conflict with the terms of this Act, all aspects of the distribution and sale
of motor vehicles shall be governed exclusively by the provisions of this Act." Id. § 3.01(b). The Act then sets outs procedures to be followed when a dealer wishes to sell or transfer a
dealership. See id. § 5.01B. The dealer must notify the manufacturer in writing of the decision to
sell and must forward certain documentation to the manufacturer. See id. § 5.01B(a). The Act
forbids a manufacturer from unreasonably rejecting a prospective transferee and sets out standards
for judging the reasonableness of a rejection. See id. § 5.01B(b),(c). The Act provides, "It is
unreasonable ... to reject a prospective transferee who is of good moral character and who otherwise
meets the manufacturer's ... written, reasonable, and uniformly applied standards or qualifications,
if any, related to the prospective transferee's ... business experience and ... financial qualifications."
Id. § 5.01B(c). Furthermore, "[i]t is unlawful for any manufacturer ... to ... [n]otwithstanding the
terms of any franchise agreement, fail to give effect to or attempt to prevent any sale or transfer of
a dealer [or] dealership ... except as provided by Section 5.01B." Id. § 5.02(b)(8). These provisions
give dealers significant control over the transfer of the dealership.

 The Act contains mechanisms for enforcing these provisions. A "dealer" whose application
to transfer is rejected may file a protest with the Board, id. § 5.01B(d), and a "franchised dealer" who
has sustained actual damages as a result of a violation of section 5.02 may file a DTPA action, id. §
6.06(a). If a DTPA action is filed, the judgment in the action "shall pay due deference to the findings
of fact and conclusions of law of the [Board] contained in a final order which forms the basis of the
action." Id. It is undisputed that the Butnarus are not "dealers" or "franchised dealers" as those
terms are defined in the Act. See id. § 1.03(7), (15). 

 Additionally, if the Board has reason to believe, through receipt of a complaint or otherwise,
that a violation of the Act has occurred, the Board is required to conduct an investigation. See id.
§ 3.05(a). If the Board determines that a person is violating the Act, the Board may issue a cease and
desist order, levy a civil penalty, or institute a suit to enjoin the violation. See id. §§ 6.01, 6.01A,
6.02.


 The Butnarus' Causes of Action 


 The Butnarus assert three causes of action. First, they allege that Ford tortiously interfered
with the purchase and sale agreements by attempting to exercise its right of first refusal. The right
of first refusal gives Ford the right to purchase the dealership "regardless of whether the proposed
buyer is qualified to be a dealer." This contract provision gives Ford significant control over the
dealership transfer. The Butnarus argue that the provision conflicts with section 5.01B, which forbids
Ford from rejecting a proposed buyer unless the buyer is not qualified. The Butnarus therefore argue
that the right of first refusal amounts to an agreement by Graf Ford and Ford to waive the terms of
the Act. Under section 1.04, such an agreement is void and unenforceable. The Butnarus also argue
that the right of first refusal is unenforceable under section 5.02(b)(8), which makes it unlawful for
a manufacturer to fail to give effect to or attempt to prevent a sale of a dealership except as provided
in section 5.01B, notwithstanding the terms of any agreement. The Butnarus argue that since the
right of first refusal is void and unenforceable, Ford's attempt to prevent their purchase of the
dealership by exercising the right of first refusal is tortious. See Bayview Buick-GMC Truck, Inc. v.
General Motors Corp., 597 So. 2d 887, 889-90 (Fla. Dist. Ct. App. 1992) (concluding, in an action
filed by a prospective dealer, that a right of first refusal in a dealership agreement violated a statutory
scheme similar to the Act).

 Second, the Butnarus allege that Graf Ford, Graf, and Barton have breached or are about to
breach the purchase and sale agreements by refusing to convey the dealership and real property to
them. They contend that Ford's exercise of the right of first refusal does not excuse performance
under the purchase and sale agreements. The only condition precedent in the agreements is that Ford
approve Hanan Butnaru as a dealer. Section 5.01B sets out the mandatory procedure for approving
or rejecting Butnaru as a dealer. Therefore, if Graf Ford, Graf, and Barton comply with the right of
first refusal before Ford has made a determination under section 5.01B, they will have breached the
purchase and sale agreements. The Butnarus also allege that Graf Ford is contractually obligated to
file a protest with the Board to challenge Ford's failure to comply with sections 5.01B and 5.02(b)(8),
but Graf Ford has refused to do so. 

 Third, the Butnarus seek a declaration that the right of first refusal is unenforceable and a
declaration of the parties' rights and obligations under the purchase and sale agreements. 


 Ford's Argument


 Ford argues that the crux of the Butnarus' complaints is that the right of first refusal is invalid
because it conflicts with sections 5.01B and 5.02(b)(8) of the Act. Ford interprets the Act as giving
the Board exclusive original jurisdiction to determine whether a manufacturer has violated these
sections. Two courts of appeals have adopted this interpretation of the Act, albeit under different
factual circumstances than those presented here. See Dupriest Automotive, Inc. v. American Honda
Motor Co., 980 S.W.2d 521, 524 (Tex. App.-Amarillo 1998), pet. denied, No. 99-0075, 2000 WL
231944 (March 2, 2000) (per curiam); Navistar Int'l Transp. Corp. v. Crim Truck & Tractor Co.,
791 S.W.2d 241, 245 (Tex. App.-Texarkana 1990), aff'd, 823 S.W.2d 591 (1992).

 Both Dupriest and Navistar involved disputes between dealers and manufacturers. In
Navistar, the court noted that the statute "provides that its remedies are exclusive and that common
law rights are generally preempted." 791 S.W.2d at 245. In Dupriest, a dealer sued American
Honda, seeking monetary damages for the violation of section 5.02(b)(8). The dealer, Dupriest, did
not file a protest with the Board before commencing the suit. Dupriest argued that the trial court had
jurisdiction because it was seeking an award of damages, which is generally within the jurisdiction
of a district court, and the Board does not have jurisdiction to award damages. The court rejected
this argument, stating:

 [T]he issue is whether American Honda unlawfully failed to give effect to or
prevented the sale of the dealership, the basis of Dupriest's cause of action for
damages. That issue, with its integral segments, is within the exclusive jurisdiction
of the [Board] ... thereby depriving the district court of subject matter jurisdiction to
settle the controversy ....

Dupriest, 980 S.W.2d at 524.

 The Butnarus argue that Dupriest and Navistar are distinguishable because they involved
disputes between dealers and manufacturers, while the instant case involves a dispute between a
prospective dealer and a manufacturer. Although the Act provides a remedy to dealers in this
situation, it does not provide a remedy to prospective dealers. See Tex. Rev. Civ. Stat. Ann. art.
4413(36), §§ 5.01B(d), 6.06(a). The Butnarus point out that causes of action for tortious
interference with contract, breach of contract, and declaratory judgment exist independently of the
Act and are generally within the jurisdiction of a district court. They believe that because the Act
does not provide them a remedy, they should be entitled to assert violations of the Act through these
well-recognized causes of action. 

 We do not agree that the legislature's failure to provide the Butnarus a remedy for violations
of sections 5.01B and 5.02(b)(8) entitles them to assert violations of the Act in district court. It is
more logical to conclude that the legislature's failure to provide a remedy to prospective dealers
means that the Act was not intended to protect or to confer any rights upon prospective dealers. The
fact that the legislature provided remedies for existing dealers indicates that its goal was to confer a
benefit or protection on dealers. The legislature apparently made a public policy decision that motor
vehicle dealers, unlike other franchisees, are entitled to significant control in determining who their
successors will be. 

 When a cause of action and the remedy for its enforcement are derived not from the common
law but from a statute, the statutory remedy is mandatory and exclusive. See In re Ament, 890
S.W.2d 39, 41 (Tex. 1994). The Act places a statutory limitation, unknown to the common law, on
a vehicle manufacturer's ability to choose its dealers, see id. § 5.01B, and provides specific
mechanisms to enforce this limitation: 1) a dealer can file a protest that will be adjudicated by the
Board, see id. § 5.01B(d); 2) the dealer can file a DTPA claim after exhausting this administrative
remedy, see id. § 6.06(a); and 3) the Board can take action against the manufacturer by levying a civil
penalty, issuing a cease and desist order, or seeking an injunction, see id. §§ 6.01, 6.01A, 6.02. The
Act also provides that "all aspects of the distribution and sale of motor vehicles shall be governed
exclusively by the provisions of this Act." Id. § 3.01(b). We therefore conclude that the trial court
does not have jurisdiction over the Butnarus' claims, to the extent their claims are based on violations
of the Act. 


 Primary Jurisdiction


 The Butnarus argue that even if the Board has jurisdiction, it does not have primary
jurisdiction. Under the doctrine of primary jurisdiction, a matter delegated by statute to an
administrative agency for initial action must be determined by that agency before it may be reviewed
by a court. See David McDavid Nissan, Inc. v. Subaru of America, Inc., No. 5-97-00025-CV, 1999
WL 1073273, at *5 (Tex. App.-Dallas Nov. 30, 1999, no pet. h.). The Butnarus argue that their
claims fall within two exceptions to the primary jurisdiction rule. 

 First, if an issue is inherently judicial in nature, the courts will not be ousted from jurisdiction
unless the legislature has explicitly granted exclusive jurisdiction to the agency. See Foree v. Crown
Cent. Petroleum Corp., 431 S.W.2d 312, 316 (Tex. 1968). The Butnarus argue that the issues raised
in their suits, involving the interpretation of statutes, are inherently judicial in nature. This is true, but,
as explained above, the legislature has made the provisions of the Act exclusive. This includes the
provisions of the Act granting the Board the original jurisdiction to investigate and adjudicate
violations of the Act. Second, primary jurisdiction does not apply when the agency is powerless to
grant the relief sought and has no authority to make incidental findings that are essential to the
granting of the relief. See id. The Board does not have the power to grant the Butnarus any relief.
It does, however, have the authority to investigate and adjudicate violations of the Act, and thereby
has the power to make incidental findings that are essential to the granting of relief. See Lake
Country Estates, Inc. v. Toman, 624 S.W.2d 677, 681 (Tex. App.-Fort Worth 1981, writ ref'd n.r.e.).


 Open Courts


 The Butnarus argue that if Ford's interpretation of the Act is correct, the Act abrogates their 

causes of action for tortious interference with contract, breach of contract, and declaratory judgment
without providing them an alternative remedy. They therefore contend that Ford's interpretation of
the Act violates the open courts provision of the Texas Constitution. See Tex. Const. art. I, § 13. 

 The open courts provision prevents the legislature from abrogating the right to assert a well-established common law cause of action unless the reason for the legislature's action outweighs the
litigants' constitutional right of redress. See City of Tyler v. Likes, 962 S.W.2d 489, 503 (Tex. 1997).
We do not construe the Act to abrogate previously existing causes of action that might relate to the
distribution of motor vehicles. See David McDavid Nissan, 1999 WL 1073273, at *7-9 (refusing to
apply section 3.01(b) of the Act to preempt common law claims for breach of contract and
promissory estoppel that were not based on violations of the Act). Rather, by enacting sections
5.01B and 5.02(b)(8), the legislature conferred a new statutory right on motor vehicle dealers and
left all others in the same position they previously occupied. See id. at *10. Therefore, the Butnarus
can sue Ford and the other defendants for tortious interference with contract, breach of contract, and
declaratory relief. They simply cannot base those causes of action on violations of sections 5.01B
and 5.02(b)(8). 


 Public Policy


 The Butnarus assert that public policy would be served by allowing the district court to
exercise jurisdiction over their claims. They argue that if they cannot challenge Ford's actions, Ford
will have successfully circumvented the Act since Graf has refused to file a protest with the Board.
 It is not necessary to allow the Butnarus to challenge Ford's actions to ensure that the Act
is enforced; the Board has the power and the responsibility to investigate and adjudicate violations
of the Act. We also reiterate that we interpret sections 5.01B and 5.02(b)(8) as being intended to
protect existing dealers. Ford's right of first refusal does not harm its existing dealer; it provides Graf
with the same financial result he would have had if the Butnarus had purchased the dealership. More
importantly, when the legislature has circumscribed a court's jurisdiction, the court cannot assume
jurisdiction simply because it believes public policy supports the exercise of jurisdiction. We therefore
reject the Butnarus' public policy argument. 


 Claims Not Based on the Act


 As explained above, the Act does not abrogate all causes of action that might arise in the
context of motor vehicle distribution. To the extent the Butnarus' claims are not based on violations
of the Act, the trial court has jurisdiction over the claims. As the pleadings are currently framed, it
appears that the Butnarus' breach of contract claims are not based on the Act. The Butnarus assert
that Ford's failure to exercise the right of first refusal was not a condition precedent to performance
under the purchase and sale agreements. They also assert that Graf Ford has a duty under the
agreements to protest Ford's exercise of the right of first refusal before the Board. These claims
depend entirely upon an interpretation of the agreements, and not upon an interpretation of the Act. 

Similarly, the request for a declaration of the parties' rights and obligations under the purchase and
sale agreements is not necessarily based on the Act. 

Adequacy of Legal Remedy


 To obtain a temporary injunction, the applicant is not required to establish that it will prevail
on final trial; the only question before the court is whether the applicant is entitled to preservation of
the status quo pending trial on the merits. See Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 

1993). The applicant must show a probable right of recovery, probable injury, and that there is no
adequate remedy at law. See PILF Investments, Inc. v. Arlitt, 940 S.W.2d 255, 258 (Tex. App.-San
Antonio 1997, no writ); Home Sav. of America, F.A. v. Van Cleave Dev. Co., 737 S.W.2d 58, 59
(Tex. App.-San Antonio 1987, no writ). On appeal, we must restrict our review to the issue of
whether the trial court abused its discretion by granting the injunction. See Davis v. Huey, 571
S.W.2d 859, 861-62 (Tex. 1978); Ireland v. Franklin, 950 S.W.2d 155, 157 (Tex. App.-San Antonio
1997, no writ). We must avoid addressing the merits of the underlying case. See Davis, 571 S.W.2d
at 861-62; Ireland, 950 S.W.2d at 157. 

 Ford argues that the Butnarus failed to establish the inadequacy of their legal remedy and a
probable right of recovery. We agree that the Butnarus failed to establish the inadequacy of their
legal remedy. We therefore do not address whether they established a probable right of recovery. The Butnarus have not suggested that it is impossible to calculate the monetary damages that
will result from their inability to purchase the dealership, nor have they suggested that any of the
defendants will be unable to pay a monetary judgment. Instead, they argue that money is no
substitute for the intangible benefits associated with owning a dealership. Intangible benefits flow
from virtually all contracts. Yet contracts generally cannot be enforced by injunction because a suit
for damages is deemed to be an adequate remedy. See Canteen Corp. v. Republic of Texas
Properties, Inc., 773 S.W.2d 398, 401 (Tex. App.-Dallas 1989, no writ); Chevron U.S.A. Inc. v.
Stoker, 666 S.W.2d 379, 382 (Tex. App.-Eastland 1984, writ dism'd). 

 The Butnarus argue that the demise of an existing business may constitute irreparable injury.
See Miller Paper Co. v. Roberts Paper Co., 901 S.W.2d 593, 602 (Tex. App.-Amarillo 1995, no
writ). Here, however, we are not concerned about the possibility of the dealership's demise; we are
only concerned with who will own the dealership. 

 The Butnarus also note that the law recognizes every piece of real property as unique. See
Home Sav., 737 S.W.2d at 59. Their breach of contract and declaratory judgment claims arise not
only from their agreement to buy the dealership, but also from their agreement to buy the real
property upon which it is located. The Butnarus are not interested in the real property for its own
resources or aesthetics. Their interest in the property results solely from the fact that the dealership
is located on it. Thus, their true complaint relates to their inability to purchase the dealership. The
uniqueness of the real property is therefore irrelevant to the adequacy of their legal remedy. 

Conclusion


 For the reasons explained herein, the trial court does not have jurisdiction over the Butnarus'
claims that are based on violations of the Act, but the court has jurisdiction over claims that are not
based on violations of the Act. We therefore dismiss the claims that are based on the Act for lack of
jurisdiction. As for the remaining claims, we conclude that the Butnarus failed to show that their legal
remedy is inadequate. Accordingly, we dissolve the temporary injunction and remand these claims
for further proceedings. 

 Tom Rickhoff, Justice 

PUBLISH