**DAVID McDAVID NISSAN, INC., Appellant,**

v.

**SUBARU OF AMERICA, INC., Appellee.**

No. 05–97–00025–CV.

Court of Appeals of Texas, Dallas.

Nov. 30, 1999.

60

Stephen A. Khoury Kelsoe, Anderson, Khoury & Clark, P.C., Dallas, for appellant.

Robert B. Dillon, Bruce C. Morris, Suzanne Baker, Beirne, Maynard & Parsons, L.L.P., Houston, for appellee.

Before Justices WHITTINGTON, JAMES, and MOSELEY.

## OPINION

MOSELEY, Justice.

David McDavid Nissan, Inc. ("McDavid") sued Subaru of America, Inc. ("Subaru") alleging Subaru refused to allow McDavid to relocate its Subaru dealership after orally consenting to the relocation. The trial court granted summary judgment in favor of Subaru on all of McDavid's claims. For the reasons set forth below, we affirm the trial court's judgment in part and reverse and remand in part.

## SUBARU'S CROSSPOINT

Before reviewing the summary judgment evidence in conjunction with McDavid's points of error, we must first decide what evidence was properly before the trial court. In a crosspoint, Subaru asserts the trial court erred in not sustaining its objections and striking the two affidavits of McDavid's president, David McDavid, filed in support of its responses to Subaru's motions for summary judgment. Subaru first asserts the David McDavid affidavit dated June 26, 1996 is not competent summary judgment evidence because it: (1) did not state it was based upon David McDavid's personal knowledge and that the facts stated therein were true and correct; (2) did not set forth how David McDavid was competent to testify; and (3) merely stated legal conclusions. Subaru also asserts that the exhibits attached to the affidavit were not in admissible form.

To be competent summary judgment evidence, an affidavit must show affirmatively that it is based on personal knowledge and that the affiant is competent to testify to the matters stated therein. See Tex.R. Civ. P. 166a(f). An affidavit that does not positively and unequivocally represent the facts as disclosed in the affidavit to be true and within the affiant's personal knowledge is legally insufficient. *Humphreys v. Caldwell,* 888 S.W.2d 469, 470 (Tex.1994). Here, David McDavid's June 26, 1996 affidavit does not state that the facts contained in it are true or within his personal knowledge; therefore, perjury cannot be assigned to it. *See Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984); *Gerstacker v. Blum Consulting Eng'rs,* 884 S.W.2d 845, 848 (Tex.App.-Dallas 1994, writ denied). Accordingly, we conclude this affidavit is insufficient, and we will not consider it for any purpose. We sustain Subaru's crosspoint of error to the extent it complains of the June 26, 1996 David McDavid affidavit.

Subaru also contends the David McDavid affidavit dated April 15, 1996 should not have been considered "for the same reasons." This statement in Subaru's brief mirrors the objection to the April 15, 1996 affidavit presented in its reply to McDavid's response to Subaru's fourth motion for summary judgment. Defects in the form of affidavits or attachments are not grounds for reversal unless *specifically* pointed out by objection by an opposing party with opportunity, but refusal, to amend. See Tex.R. Civ. P. 166a(f). Our review of the April 15, 1996 affidavit shows that, contrary to Subaru's assertion, many of the objections specific to the June 26, 1996 affidavit do not apply to the April 15, 1996 affidavit. Accordingly, Subaru's general objection to the April 15, 1996 affidavit incorporating all of the objections to the June 26, 1996 affidavit

was insufficient to notify the trial court of any deficiencies specific to the April 15, 1996 affidavit. By failing to present a specific objection, Subaru failed to preserve any error for our review. *See id.* We overrule Subaru's crosspoint to the extent it complains of David McDavid's April 15, 1996 affidavit.

## BACKGROUND

■ Having decided what evidence was properly before the trial court, we review this evidence in light of McDavid's points of error attacking the summary judgment entered below. In doing so, we take evidence favorable to the nonmovant as true. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). We will not consider evidence that favors the movant's position unless it is uncontroverted. *See Harwell v. State Farm Mut. Auto. Ins.,* 896 S.W.2d 170, 173 (Tex.1995); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *See Nixon,* 690 S.W.2d at 549. From this perspective, we summarize the evidence before the trial court as follows.

McDavid owned and operated a Subaru dealership at 11200 Gulf Freeway (the "Dealership") and an Oldsmobile dealership at 6800 Gulf Freeway, both in Houston, Texas. In 1991, McDavid and John Gage, Subaru's regional vice-president, discussed the possibility of McDavid relocating the Dealership to 6800 Gulf Freeway and relocating the Oldsmobile dealership to 11200 Gulf Freeway. Gage orally consented to the relocation of the Dealership. McDavid did not submit a written request to relocate. Instead, relying on Gage's oral consent, he renovated the 11200 Gulf Freeway location and moved the Oldsmobile dealership there in preparation for moving the Dealership to 6800 Gulf Freeway.

On November 6, 1991, Gage sent McDavid a letter stating Subaru had just learned McDavid planned to move the Dealership to 6800 Gulf Freeway and that Subaru would not consent to such a move. This prevented McDavid from moving the Dealership. Thereafter, McDavid terminated the Dealership and two other Subaru dealerships it owned. Pursuant to the Texas Motor Vehicle Commission Code ("Code"), McDavid received a check from Subaru in payment for certain assets repurchased from the three dealerships. McDavid then sued Subaru for refusing to permit McDavid to relocate the Dealership, alleging violations of article 4413(36), section 5.02(15) of the Code,[1] breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA").

Subaru moved for summary judgment on all of McDavid's causes of action, asserting McDavid was barred as a matter of law from bringing its claims because it failed to raise those claims before the Texas Motor Vehicle Commission ("TMVC"). Subaru also asserted that, by terminating the Dealership, McDavid elected its remedy and was not entitled to recover any additional money from Subaru. Subaru subsequently filed additional motions for summary judgment on McDavid's breach of contract, DTPA, and breach of good faith and fair dealing claims on various other grounds.

Before the trial court ruled on Subaru's motions, McDavid filed a supplemental petition and asserted that Subaru was "equitably estopped" from denying the existence of its agreement with McDavid. The trial court subsequently granted Subaru's first three motions for summary judgment on McDavid's causes of action for violations of the Code, breach of contract, DTPA, and good faith and fair dealing claims without stating the grounds upon

1. Unless otherwise noted, all statutory references to the Code herein are to the version of the Code in effect at the time of the acts giving rise to this lawsuit.

which its ruling was based. The trial court, reading McDavid's supplemental petition broadly to also plead a claim of promissory estoppel, specifically excepted McDavid's "claims and causes of action for promissory and/or equitable estoppel" from the partial summary judgment.

Subaru filed a fourth motion for summary judgment asserting it was entitled to judgment as a matter of law on all of McDavid's asserted causes of action because they were barred under the doctrine of accord and satisfaction and because McDavid failed to exhaust its administrative remedies by first presenting its claims to the TMVC. Subaru also asserted that, as a matter of law, no cause of action existed for "equitable estoppel," and that McDavid's promissory estoppel claim was barred as a matter of law because (1) it would not be unjust to prevent McDavid from trying to enforce the alleged promise, (2) the terms of the alleged promise were too vague to be enforced, and (3) McDavid was not damaged by the alleged promise. McDavid responded, among other things, that to require it to first present its claims to the TMVC would violate its constitutional rights to trial by jury and open courts. The trial court subsequently granted Subaru's fourth motion for summary judgment.

McDavid timely perfected this appeal. However, McDavid does not challenge the summary judgment granted in favor of Subaru on McDavid's causes of action for "equitable estoppel" and for violation of article 4413(36), section 5.02(15) of the Code. We thus affirm those portions of the summary judgment. In doing so, we do not address whether equitable estoppel may be asserted offensively. *See Crowder v. Tri–C Resources, Inc.,* 821 S.W.2d 393, 397 (Tex.App.-Houston [1st Dist.] 1991, no writ) (equitable estoppel is defensive in character and may not be used to establish a cause of action where none exists).

## STANDARD OF REVIEW

■ The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit; rather, the rule provides a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of fact remains. *See Gaines v. Hamman,* 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962). To obtain a summary judgment, the movant has the burden of showing there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c).

■ Summary judgment for the defendant is proper when the summary judgment evidence negates an essential element of the plaintiff's cause of action as a matter of law or conclusively establishes all the elements of an affirmative defense. *See Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the nonmovant to produce controverting evidence raising a fact issue as to the elements negated. *See Torres v. Western Cas. & Sur. Co.,* 457 S.W.2d 50, 52 (Tex.1970); *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.,* 821 S.W.2d 283, 286 (Tex.App.-Houston [1st Dist.] 1991, writ denied).

■ We uphold a summary judgment on any ground that is supported by the evidence and pleadings. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989). When, as here, the order granting summary judgment does not specify the particular grounds on which the trial court relied, to prevail on appeal, the nonmovant must defeat each ground for summary judgment presented in the motion. *See id.*

## PRIMARY JURISDICTION OF THE TMVC

In its first point of error, McDavid asserts, among other things, that the trial court erred in granting summary judgment in favor of Subaru on its causes of action for breach of oral contract, promissory estoppel, breach of the duty of good

faith and fair dealing, and DTPA violations on the ground that McDavid failed to first pursue these claims before the TMVC.[2] Subaru responds the trial court properly recognized that the TMVC has exclusive jurisdiction over the question of whether Subaru's denial of the relocation request was "unlawful," and the "unlawfulness" issue is embedded within each of McDavid's causes of action. Subaru contends that because McDavid failed to first present a claim to the TMVC that Subaru unlawfully denied McDavid's relocation request, McDavid waived its opportunity to establish Subaru's denial was unlawful. Because McDavid failed to obtain the prerequisite finding of unlawfulness from the TMVC, Subaru maintains McDavid cannot prove an essential element of each of its asserted causes of action.

## A. Applicable Law

■ Administrative agencies are created by statute and have no inherent authority. *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137 (Tex.App.-Austin 1986, writ ref'd n.r.e.). Therefore, they may exercise only those specific powers the law confers upon them in clear and express language. *Kawasaki Motors Corp. v. Texas Motor Vehicle Comm'n*, 855 S.W.2d 792, 797 (Tex.App.-Austin 1993, no writ). An agency may also exercise powers necessarily implied from the statutory authority granted or the duties expressly given or imposed. *See Sexton*, 720 S.W.2d at 137. However, the agency may not, on a theory of necessary implication from a specific power, function, or duty expressly delegated, erect and exercise a new or additional power or a power that contradicts the statute. *See id.* at 137–38.

■ Under the doctrine of primary jurisdiction, a matter delegated by statute to an administrative agency for initial action must be determined by that agency before it may be reviewed by a court. *Pedraza v. Tibbs*, 826 S.W.2d 695, 699 (Tex.App.-Houston [1 st Dist.] 1992, writ dism'd w.o.j.). The purpose of the primary jurisdiction doctrine is to ensure that the agency will not be bypassed on matters committed to it, and the doctrine applies even if the agency is powerless to grant the relief sought but does have statutory authority to make incidental findings necessary to the granting of relief in later judicial action. *See Lake Country Estates, Inc. v. Toman*, 624 S.W.2d 677, 681 (Tex.App.-Fort Worth 1981, writ ref'd n.r.e.). Thus, the issue before us is whether the legislature delegated to the TMVC the authority to determine the enforceability of an alleged oral agreement to permit relocation of a dealership.

■ The Code was enacted to ensure a sound system of distributing and selling motor vehicles through licensing and regulating vehicle manufacturers, distributors, and dealers. *See* Act of May 20, 1987, 70th Leg., R.S., ch. 357, § 1, 1987 Tex. Gen. Laws 1781, 1781–82, *amended by* Act of May 19, 1995, 74th Leg., R.S., ch. 357, § 1, 1995 Tex. Gen. Laws 2887, 2887 (current version at Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 1.02 (Vernon Supp.2000)). The Code provides the TMVC shall carry out the duties and functions conferred upon it by the Code. In 1991, at the time of the acts giving rise to this lawsuit, section 3.01 of the Code provided:

> (a) The Commission is hereby delegated and vested with, in the exercise of the State's police power, the general and original power and jurisdiction to *regulate all aspects of the distribution and sale of new motor vehicles* and to do all things, whether specifically designated in this Act or implied herein, or necessary or convenient to the exercise of its

---

2. By this point, McDavid also challenges the trial court's grant of summary judgment on its claim for breach of the written dealership agreement. However, we will not address the primary jurisdiction of the TMVC with respect to breach of the written agreement because, as set forth below, we conclude that Subaru negated an essential element of this cause of action as a matter of law.

power and jurisdiction, including the original jurisdiction to determine questions of its own jurisdiction.

(b) Unless otherwise specifically provided by Texas law not in conflict with the terms of this Act, *all* aspects of the distribution and sale of motor vehicles *shall be governed exclusively* by the provisions of this Act.

Act of May 18, 1989, 71 st Leg., R.S., ch. 1130, § 9, 1989 Tex. Gen. Laws 4653, 4657 (subsequent amendments not listed) (current version at TEX.REV.CIV. STAT. ANN. art. 4413(36), § 3.01 (Vernon Supp.2000)) (emphasis added).[3]

 If the TMVC determines that any person is violating or has violated any provision of the Code, or any TMVC rule or order issued pursuant to the Code, it may levy a civil penalty for such violation, issue cease and desist orders, issue an injunction, or institute a lawsuit in the name of the State of Texas. *See* TEX.REV. CIV. STAT. ANN. art. 4413(36), §§ 6.01–.03 (Vernon Supp.2000). However, the TMVC is not vested with the power to award damages to parties. *See Kawasaki*, 855 S.W.2d at 798 (TMVC may impose civil penalties for Code violations but cannot adjudicate private dispute between franchisors and franchisees).

Section 5.02 lists specific actions deemed "unlawful" by the Code. Section 5.02(15), the section upon which Subaru relies in this case, provides:

> It is *unlawful* for any manufacturer, distributor, or representative to . . . notwithstanding the terms of any franchise agreement, deny or withhold approval of *a written application to relocate a franchise* unless (A) the applicant has received written notice of the denial or withholding of approval within 60 days after receipt of the application containing information reasonably necessary to enable the manufacturer or distributor

to adequately evaluate the application, and if (B) the applicant files a protest with the board and the manufacturer or distributor establishes by a preponderance of the evidence at a hearing called by the board that the grounds for the denial or withholding of approval of the relocation are reasonable.

Act of May 25, 1991, 72d Leg., R.S., ch. 501, § 19, 1991 Tex. Gen. Laws 1749, 1756–60 (subsequent amendments not listed) (current version at TEX.REV.CIV. STAT. ANN. art. 4413(36), § 5.02(b)(15) (Vernon Supp.2000)) (emphasis added).

### B. Breach of Oral Contract and Promissory Estoppel Causes of Action

#### 1. Scope of Section 5.02(15)

 Section 5.02(15) limits the rights of manufacturers to deny or withhold approval of written requests to relocate and sets forth an administrative procedure for reviewing the denial of any such request. Thus, the TMVC would have primary jurisdiction to determine whether, under the Code, Subaru properly denied any written request for relocation. However, by its own terms, section 5.02(15) does not apply to oral relocation requests.

Here, McDavid's breach of oral contract and promissory estoppel causes of action assert that Subaru *orally* agreed to McDavid's *oral* request to relocate the Dealership, and then wrongfully rescinded or disavowed its agreement. Further, the undisputed summary judgment evidence shows McDavid never requested permission to relocate in writing. Because an oral relocation request does not contradict any requirement of the Code, or implicate any rights or obligations under section 5.02(15), Subaru's disposition of such a request could not, as a matter of law, constitute a violation of the Code.

---

3. The summary judgment record does not include any regulations passed by the TMVC applicable to relocation requests, and the parties do not reference any such regulations.

Thus, not at issue in this case is whether the TMVC may, by regulation pursuant to the Code, regulate the manner in which relocation requests are made or resolved.

We conclude the Code does not delegate to the TMVC the authority to determine a dispute between a manufacturer and a dealer concerning the enforceability of an alleged oral agreement to permit a dealership's relocation. Therefore, the TMVC had no primary jurisdiction to make incidental findings concerning the legality or efficacy of Subaru's actions, and McDavid was not required to present its non-Code claims for breach of oral contract and promissory estoppel to the TMVC before it pursued them in court.

In support of its argument that McDavid was required to first present any claim against Subaru to the TMVC, Subaru relies on *Dupriest Automotive, Inc. v. American Honda Motor Co.,* 980 S.W.2d 521, 524 (Tex.App.-Amarillo 1998, pet. filed). In that case, Dupriest wanted to sell its Acura dealership to Brown Pontiac under a proposed buy-sell agreement that would have made the purchase contingent upon the consolidation of the Acura dealership with a Honda dealership Brown already owned. After reviewing the buy-sell agreement, American Honda advised Dupriest it would not approve the proposed consolidation of the Acura and Honda dealerships. American Honda later terminated the Honda dealership because Dupriest was suffering financial difficulties.

Dupriest sued American Honda for damages, alleging it violated the Code by attempting to prevent the sale of the dealership. American Honda counterclaimed seeking a declaratory judgment decreeing that, by not filing a protest with the TMVC, Dupriest waived its right to complain of American Honda's actions. The trial court granted summary judgment in favor of American Honda.

Dupriest appealed, contending the trial court erred in granting summary judgment. Characterizing the issue as whether American Honda unlawfully failed to give effect to or prevented the sale of the dealership, the Amarillo Court of Appeals held this issue was within the exclusive jurisdiction of the TMVC, and the district court had no jurisdiction to settle the controversy by declaratory judgment. *See id.* The court then dismissed Dupriest's cause of action. *Id.* at 524–25.

We find *Dupriest* distinguishable from the present case. The cause of action asserted in *Dupriest* arose from an alleged violation of the Code—a matter within the primary jurisdiction of the TMVC. Here, McDavid is asserting claims for breach of oral contract and promissory estoppel against Subaru for allegedly rescinding or disavowing its oral permission to permit relocation of the Dealership—a matter not addressed by the Code.

■ Subaru argues that section 5.02(15) required McDavid to request relocation permission in writing. We disagree. Section 5.02(15) sets forth certain obligations and procedures arising from a written relocation request. However, neither it nor any other provision of the Code expressly prohibits an oral relocation request or an oral agreement approving relocation. Neither does the Code limit a manufacturer's rights to deny such a request or afford any procedural safeguards concerning the disposition of such a request.[4] Although McDavid's oral request did not trigger any of the protections that would have been available to it under section 5.02(15), neither do its causes of action for breach of contract and promissory estoppel arising from the alleged oral relocation agreement come within the primary jurisdiction of the TMVC. To hold otherwise, we would have to read the word "written" out of section 5.02(15), thus rendering section 5.02(15) applicable to both written and oral relocation agreements.

4. We also note that, contrary to Subaru's assertions, the franchise agreement between McDavid and Subaru concerning the Dealership did not require McDavid to request relocation in writing. The agreement only requires Subaru to communicate its decision to grant or withhold consent to a relocation request in writing to the distributor, who will in turn notify the dealer.

This we decline to do. *See Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540 (Tex.1981) (every word of a statute is presumed to have been used for a purpose).

2. Preemption of Common Law Claims

Subaru also contends the Code preempts any claim by McDavid based on the breach of an oral agreement to relocate the dealership. As noted above, Section 3.01(b) of the Code states:

(b) Unless otherwise specifically provided by Texas law not in conflict with the terms of this Act, *all* aspects of the distribution and sale of motor vehicles *shall be governed exclusively* by the provisions of this Act.

Act of May 18,1989, 71st Leg., R.S., ch. 1130, § 9, 1989 Tex. Gen. Laws 4653, 4657 (subsequent amendments not listed) (current version at TEX.REV.CIV. STAT. ANN. art. 4413(36), § 3.01(b) (Vernon Supp.2000)) (emphasis added). Based on this language, Subaru argues that the Code's remedies are exclusive and that common law rights are generally preempted.[5]

In response, McDavid argued below and to this Court that Subaru's proposed interpretation of section 3.01(b) would contravene the open courts provision of the Texas Constitution, which states that all courts shall be open and every person shall have a remedy for his injuries by due process of law. *See* TEX. CONST. art. I, § 13. Among other things, this section of the Constitution prohibits the legislature from abrogating well-established common law causes of action unless the reason for its action outweighs the litigants' constitutional right of redress. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 448 (Tex. 1993) (citing *Sax v. Votteler,* 648 S.W.2d

661, 665–66 (Tex.1983)). Thus, a legislative provision withdrawing common law causes of action or remedies is constitutional only if the provision is reasonable in substituting other remedies, or when it is a reasonable exercise of the police power in the interest of the general welfare. *See Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 520–21 (Tex.1995).

We agree with Subaru that, read literally, section 3.01(b) strips any other statutory or common law duties and remedies from transactions and relationships involved in the purchase and sale of motor vehicles. Removing the protections afforded by these legal principles would leave such transactions and relationships subject only to the obligations and protections specifically set forth or referenced in the Code. These obligations and protections are quite limited. For example, the Code does not provide that any breach of a dealership agreement also constitutes a Code violation. Thus, breach of such an agreement would not be actionable unless the circumstances also happened to violate a specific provision of the Code. Further, as noted previously, the TMVC is not vested with the power to award damages to parties. *See Kawasaki,* 855 S.W.2d at 798. Thus, a party may not obtain a remedy for its damages through a TMVC enforcement action.

Applying section 3.01(b) to the case at bar, the Code abrogates McDavid's common law claims for breach of contract and promissory estoppel arising from an alleged oral relocation agreement with Subaru. However, because breach of an oral relocation agreement does not constitute a breach of section 5.02(15) or any other provision of the Code, the Code substitutes no other remedy in place of McDavid's common law claims. *See Sax,* 648 S.W.2d

---

5. In support of this interpretation, Subaru cites language to this effect from the Texarkana Court of Appeals opinion in *Navistar International Transportation Corp. v. Crim Truck & Tractor Co.,* 791 S.W.2d 241, 245 (Tex.App.-Texarkana 1990), *aff'd,* 823 S.W.2d 591 (Tex.1992). However, the referenced language from *Navistar* was made without any analysis or citation to authority. Further, the version of the Code applicable to the cause of action in *Navistar* did not contain the exclusivity provision. *Id.* Thus, the referenced text from *Navistar* is dicta.

at 667. Neither did the legislature state how the abrogation of such claims constitutes a reasonable exercise of the police power in the interest of the general welfare. *See Garcia*, 893 S.W.2d at 520–21. (Indeed, the legislature did not specifically prohibit claims such as those at issue here; at most, the interplay between sections 3.01(b) and 5.02(15) abrogates such claims by implication.) Under these circumstances, we fail to see how the abrogation of claims such as those asserted by McDavid constitutes a reasonable exercise of the police power in the interest of the general welfare. *See id.*

McDavid's causes of action for breach of contract and promissory estoppel based on the alleged oral agreement to permit relocation of the Dealership are based on circumstances that do not constitute violations of the Code. Section 3.01(b) abrogates those claims without reasonably substituting another remedy. *See Sax*, 648 S.W.2d at 667. Absent any explanation from the legislature as to how abrogating common law claims such as those presented here constitutes a reasonable exercise of the police power in the interest of the general welfare, *see Garcia*, 893 S.W.2d at 520–21, we decline to hold it is. Thus, section 3.01(b) contravenes the open courts provision of the Texas Constitution. *See* TEX. CONST. art. I, § 13. Therefore, we refuse to apply section 3.01(b) to preempt McDavid's common law claims for breach of contract and promissory estoppel arising from the breach of any oral agreement to relocate the Dealership.

In summary, McDavid was not obligated to first present its claims for breach of oral contract and promissory estoppel to the TMVC before pursuing them in district court, and these claims are not preempted by the Code. Thus, the trial court erred in granting summary judgment on these causes of action on these grounds. We sustain McDavid's first point of error to the extent it complains of the trial court's grant of summary judgment on these claims. Because of our ruling, we need

not address McDavid's contention that the Code violates its constitutional right to a trial by jury as to these causes of action. *See* TEX. CONST. art. I, § 15.

## C. DTPA Cause of Action

McDavid also asserted a cause of action against Subaru for violations of the DTPA. Specifically, McDavid asserted that Subaru's unlawful conduct violated sections 17.46(b)(5), (12), and (23) of the DTPA, commonly known as the "DPTA laundry list." *See* TEX. BUS. & COM.CODE ANN. § 17.46(b) (Vernon Pamph.2000).

■ Section 6.06(a) of the Code provides:

Notwithstanding any other provison of law, in addition to the other remedies provided by this subchapter, a person who has sustained actual damages as a result of a violation of Section 5.01 or Section 5.02 of this Act may maintain an action *pursuant to* the terms of Subchapter E, Chapter 17, Business and Commerce Code or any successor statute thereto and shall be entitled to all procedures and remedies provided for therein. In any action brought *under this section,* and in the interest of judicial economy and efficiency, a judgment rendered pursuant to this section shall pay due deference to *the findings of fact and conclusions of law of the Commission contained in a final order which forms the basis of the action.*

*See* Act of May 18, 1989, 71st Leg., R.S., ch. 1130, § 33, 1989 Tex. Gen. Laws 4653, 4671, *amended by* Act of May 19, 1995, 74th Leg., R.S., ch. 357, § 21, 1995 Tex. Gen. Laws 2887, 2901 (current version at TEX.REV.CIV. STAT. ANN. art. 4413(36), § 6.06(a) (Vernon Supp.2000)) (emphasis added). Contrary to McDavid's assertions, this section clearly shows a legislative intent that the TMVC have primary jurisdiction to determine whether the Code was violated before a party may assert in court a cause of action "pursuant to" the DTPA for damages resulting from that

violation. The statute expressly envisions that the "basis of the action" will be the TMVC's finding of facts and conclusions of law that a Code violation occurred. Because the TMVC has primary jurisdiction to determine whether a Code violation occurred, before maintaining its Code/DTPA cause of action in district court, McDavid was required to present its claim to the TMVC and obtain findings that Subaru violated the Code.

 In reaching this conclusion, we necessarily reject McDavid's contention that this prerequisite violates its constitutional rights to a trial by jury and to open courts. The constitutional right to a trial by jury is inviolate in all actions where that right existed at the time the constitution was adopted. TEX. CONST. art. I, § 15. The Texas Constitution was adopted in 1876. See Adams v. Board of Chiropractic Exam'rs, 744 S.W.2d 648, 651 (Tex.App.-Austin 1988, no writ). The cause of action set forth in section 6.06(a) of the Code did not exist at common law. See Act of May 28, 1979, 66th Leg., R.S., ch. 709, § 25, 1979 Tex. Gen. Laws 1725, 1732 (adding section 6.06(a) to the Code in 1979). Further, the DTPA was enacted in 1973 to protect consumers against false, misleading, and deceptive business practices, unconscionable action, and breaches of warranty. See Act of May 21, 1973, 63d Leg., R.S., ch. 143, § 1, 1973 Tex. Gen. Laws 322, 322–23. McDavid's claims under section 6.06(a) of the Code and/or the DTPA are statutory; therefore, requiring McDavid to obtain a TMVC finding that Subaru violated the Code before filing suit for that violation "pursuant to" the DTPA does not violate McDavid's constitutional right to a jury trial. See TEX. CONST. art. I, § 15.

 As noted above, the Texas Constitution also provides that all courts shall be open and every person shall have a remedy for his injuries by due process of law. TEX. CONST. art. I, § 13. However, we have already concluded that McDavid's Code/DTPA claims are statutory; there-

fore, requiring it to assert these claims before the TMVC does not violate the open courts provision of the Texas Constitution because such a requirement does not abrogate any common law rights.

Based on the foregoing, we render the judgment the trial court should have rendered and dismiss McDavid's Code/DTPA claims for lack of jurisdiction. See Dupriest, 980 S.W.2d at 524. Because of our disposition of this portion of McDavid's first point of error, we need not address McDavid's fourth point of error in which it asserts the trial court erred in granting summary judgment on its Code/DTPA claims on the ground that McDavid was not a consumer.

## D. Breach of Good Faith and Fair Dealing Cause of Action

 McDavid also asserted a cause of action for breach of the duty of good faith and fair dealing. No duty of good faith and fair dealing arises from ordinary contractual relationships. See English v. Fischer, 660 S.W.2d 521, 522 (Tex.1983). However, the legislature provided that "[e]ach party to a franchise agreement owes a duty of good faith and fair dealing to the other party." See TEX.REV.CIV. STAT. ANN. art. 4413(36), § 6.06(e) (Vernon Supp. 2000). Section 6.06(e) also states that the duty is "actionable in tort." Id. Section 6.06(e) became effective on June 16, 1991. See Act of May 25, 1991, 72d Leg., R.S., ch. 501, § 22, 1991 Tex. Gen. Laws 1748, 1761.

 Unlike the cause of action "pursuant to" the DTPA set forth in subsection (a) to section 6.06, the legislature did not specify that a cause of action for breach of the duty of good faith and fair dealing created by subsection (e) is predicated on TMVC findings of a Code violation. Because the legislature did not specify that a claimant must obtain a TMVC finding that the Code was violated before it could pursue its cause of action for breach of the duty of good faith and fair dealing, and

because the Code expressly states that this claim is actionable in tort, we conclude McDavid was not required to present this claim to the TMVC before pursuing it in court. Thus, the trial court erred in granting summary judgment on this basis. We sustain that portion of McDavid's first point of error to the extent it complains of the trial court's grant of summary judgment on its breach of good faith and fair dealing claim.

In McDavid's third point of error, it asserts the trial court erred in granting summary judgment based on its breach of the duty of good faith and fair dealing claim on the ground that no such cause of action exists. As stated above, this cause of action was expressly created by the Code. *See* TEX.REV.CIV. STAT. ANN. art. 4413(36), § 6.06(e) (Vernon Supp.2000). Accordingly, the trial court erred in granting summary judgment in favor of Subaru on this cause of action. We sustain McDavid's third point of error.

### ELECTION OF REMEDIES AND ESTOPPEL

Under its first point of error, McDavid also contends the trial court erred in granting summary judgment based on Subaru's affirmative defenses of election of remedies and estoppel.

Subaru moved for summary judgment asserting McDavid had elected its remedy by pursuing a voluntary termination of the Dealership and accepting benefits under the termination proceeding in the form of a monetary payment from Subaru. Subaru argued that, because McDavid accepted the final check for the repurchase of the Dealership's assets, it was estopped from complaining that Subaru's refusal to allow relocation was unlawful or that it had no choice other than to terminate all of its Subaru dealerships.

### A. Election of Remedies

■■■ The doctrine of election of remedies is an affirmative defense that, under certain circumstances, bars a claim-

ant from pursuing two inconsistent remedies. *See Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848, 850–52 (Tex.1980). The doctrine combines elements of estoppel, ratification, and unjust enrichment. *Id.* at 851. The election doctrine may constitute a bar to relief when one successfully exercises an informed choice between two or more remedies, rights, or facts which are so inconsistent as to constitute manifest injustice. *Id.*

McDavid argues that accepting Subaru's check for repurchasing the Dealership's assets as required under the Code termination procedure does not constitute conduct inconsistent with pursuing its asserted causes of action arising from Subaru's withdrawal of permission to relocate. According to McDavid, the termination benefits were not intended to compensate it for consequential damages proximately caused by Subaru's common law and statutory Code/DTPA violations. We agree.

■■■ Under the Code, upon termination of a dealership, the manufacturer must repurchase from the dealership its inventory, parts, signs, tools, and equipment within a specified period of time. *See* Act of May 25, 1991, 72d Leg., R.S., ch. 501, § 19, 1991 Tex. Gen. Laws 1749, 1756–60 (subsequent amendments not listed) (current version at TEX.REV.CIV. STAT. ANN. art. 4413(36), § 5.02(b)(16)(F) (Vernon Supp. 2000)). This obligation is statutory and is not contingent on any finding of breach or fault by either the manufacturer or the dealer. We find nothing inconsistent about a terminated dealer accepting payment for the legally mandated repurchase of dealership assets and also pursuing any common law and statutory causes of action it may have against the manufacturer arising from the contractual relationship between the parties. Accordingly, we conclude the election of remedies doctrine does not apply under the facts of this case, and the trial court erred in granting summary judgment on this ground.

## B. Estoppel

Under the related doctrine of estoppel, a party is precluded from asserting, to another's disadvantage, a right inconsistent with a position it has previously taken. *See Enochs v. Brown*, 872 S.W.2d 312, 317 (Tex.App.-Austin 1994, no writ). This doctrine applies where it would be unconscionable to allow a party to maintain a position inconsistent with one in which it acquiesced or from which it accepted a benefit. *Steubner Realty 19, Ltd. v. Cravens Road 88, Ltd.*, 817 S.W.2d 160, 164 (Tex.App.—Houston [14 th Dist.] 1991, no writ) (citing 31 C.J.S. *Estoppel* § 107 (1964)). Again, we conclude as a matter of law that, in accepting payment under the termination provisions of the Code, McDavid did not act in a manner inconsistent with pursuing the common law and statutory causes of action it asserts here. Accordingly, the trial court erred in granting summary judgment on this ground. We sustain that portion of McDavid's first point of error complaining the trial court erred in granting summary judgment on the grounds of election of remedies and estoppel.

## ACCORD AND SATISFACTION

In its fifth point of error, McDavid contends the trial court erred in granting summary judgment based on Subaru's affirmative defense of accord and satisfaction. In response, Subaru asserts that because the summary judgment evidence shows McDavid accepted the check after Subaru "made it clear" such acceptance was contingent upon releasing Subaru from any liability, McDavid is barred from pursuing its claims against Subaru.

Accord and satisfaction is an affirmative defense that rests upon a new contract, express or implied, in which the parties agree to the discharge of an existing obligation by means of the lesser payment tendered and accepted. *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1969); *Hycarbex, Inc. v. Anglo-Suisse, Inc.*, 927 S.W.2d 103, 108 (Tex. App.—Houston [14 th Dist.] 1996, no writ). There must be an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation. *Hycarbex*, 927 S.W.2d at 108. The mere payment and acceptance of money, without more, does not constitute an accord and satisfaction. *See Pate v. McClain*, 769 S.W.2d 356, 362 (Tex.App.-Beaumont 1989, writ denied).

The summary judgment evidence shows McDavid sought and obtained termination of its three Subaru franchises pursuant to section 5.02(16) of the Code. Section 16 provides that upon termination, the franchisor shall buy back the dealer's inventory, parts, equipment, and tools within specified time periods. *See* Act of May 25, 1991, 72d Leg., R.S., ch. 501, § 19, 1991 Tex. Gen. Laws 1749, 1756–60 (subsequent amendments not listed) (current version at TEX.REV.CIV. STAT. ANN. art. 4413(36), § 5.02(b)(16)(F) (Vernon Supp.2000)). By letter, Subaru agreed to repurchase the assets of the Dealership pursuant to the Code. In a subsequent letter, Subaru sent McDavid a "Revised Agreement and Release Form" and stated that final payment would not be made until Subaru received the signed release. The Revised Agreement and Release contained the following provision:

> Dealer hereby releases SOA [Subaru of America] and SOA hereby releases Dealer from any and all claims, liabilities, demands, and damages of any kind, any nature whatsoever known or unknown, now existing or hereafter arising from or out of or in connection with any dealership agreement with SOA or out of the parties' relationship as Dealer and Distributor....

In a letter accompanying the payment for termination benefits, Subaru stated that it would "still like to have the fully executed Agreement and Release Form." By letter, McDavid responded that it would not execute the release and had negotiated the

termination benefit checks without restriction.

 Contrary to Subaru's assertions, nothing in the summary judgment evidence conclusively shows the check tendered to McDavid was more than payment for the assets Subaru was statutorily required to repurchase upon termination of the dealership. At best, the summary judgment evidence merely raises a fact issue about the parties' intentions. Accordingly, we conclude Subaru failed to prove the affirmative defense of accord and satisfaction as a matter of law; therefore, the trial court erred in granting summary judgment on this ground. We sustain McDavid's fifth point of error.

## BREACH OF CONTRACT/PROMISSORY ESTOPPEL

In its second point of error, McDavid contends the trial court erred in granting summary judgment on its claims for breach of written and oral contract and promissory estoppel because genuine issues of material fact exist. In its original petition, McDavid alleged it had discussed relocation of the Dealership with Gage, Subaru's representative, and Gage approved and authorized the relocation. McDavid further alleged that Gage represented that, upon written request, Subaru would approve the relocation. In reliance on these assertions, McDavid relocated its Oldsmobile dealership to make room for the Subaru Dealership and incurred significant expenses relating to the relocation. McDavid later supplemented its petition adding a cause of action for promissory estoppel, asserting Subaru was estopped from denying the existence of an agreement to permit the relocation because McDavid had relied on Subaru's representation to its detriment.

### A. Breach of the Written Dealership Agreement

 McDavid first asserts that the trial court erred in granting summary judg-

ment on its breach of written contract claim because the dealership agreement provided McDavid a right of relocation and McDavid's affidavit testimony raised genuine issues of material fact regarding the parties' intent with respect to the application of the relocation provision. Subaru responds that, because McDavid did not plead any ambiguity in the terms of the written agreement, McDavid's affidavit testimony regarding the intent of the parties was irrelevant. Subaru further responds that the language of the contract shows McDavid did not have an absolute contractual right to relocation; rather, it could relocate a dealership only upon the consent of Subaru. We agree with Subaru.

Contrary to McDavid's assertions, nothing in the dealership agreement grants McDavid an absolute right to relocate the Dealership. Section 14 of the dealership agreement unambiguously requires Subaru's consent to, among other things, any "relocation of facilities or establishment of facilities." Section 14 further provides that the consent or denial is within Subaru's sole discretion. Subaru also presented summary judgment evidence in the form of David McDavid's deposition testimony in which David McDavid admitted he was not claiming Subaru breached the dealer agreement; instead, he was claiming Subaru breached its oral agreement to allow McDavid to relocate the Dealership.

Accordingly, we conclude that Subaru negated, as a matter of law, an essential element of McDavid's cause of action for breach of the written contract. Therefore, the trial court correctly granted summary judgment in favor of Subaru on this claim.

### B. Breach of Oral Contract

McDavid also asserts that the trial court erred in granting summary judgment on its cause of action for breach of contract based on Gage's verbal consent to the relocation. McDavid asserts that David McDavid's affidavit raises various fact is-

sues relating to whether Subaru breached its oral agreement and that Subaru failed to offer any summary judgment evidence showing the oral agreement with Gage was not supported by consideration.

 It is well settled that every contract must be supported by consideration to be enforceable. *Fourticq v. Fireman's Fund Ins. Co.*, 679 S.W.2d 562, 564 (Tex. App.-Dallas 1984, no writ). Consideration is a present exchange bargained for in return for a promise. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991). It can consist of either a benefit to the promisor or a detriment to the promisee. *Id.*

 Subaru moved for summary judgment on McDavid's breach of oral contract claim, asserting as an affirmative defense that no consideration existed for the alleged oral contract. A party seeking summary judgment on the affirmative defense of no consideration must conclusively prove all the essential elements of that affirmative defense. *Id.* at 495. The summary judgment evidence does not affirmatively and conclusively show the oral promise by Gage was not supported by consideration. Accordingly, Subaru failed to prove as a matter of law that Gage's alleged oral agreement to permit relocation was unsupported by any consideration. Thus, the trial court erred in granting summary judgment on McDavid's cause of action for breach of the oral contract.

### C. Promissory Estoppel

Finally, McDavid asserts that the trial court erred in granting summary judgment on its promissory estoppel claim. Subaru moved for summary judgment on McDavid's promissory estoppel claim on the grounds that: (1) it would not be unjust as a matter of law to refuse to enforce the promise; (2) the promise was too vague as a matter of law to be enforced; and (3) McDavid was not damaged by Subaru's actions.

 Although promissory estoppel is normally a defensive theory, it is an available cause of action to a promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise. *Wheeler v. White*, 398 S.W.2d 93, 96–97 (Tex.1965); *Henderson v. Texas Commerce Bank–Midland, N.A.*, 837 S.W.2d 778, 781–82 (Tex.App.-El Paso 1992, writ denied). The elements of promissory estoppel include: (1) a promise; (2) forseeability of reliance thereon by the promisor; and (3) detrimental reliance by the promisee. *Fischer*, 660 S.W.2d at 524. The damages recoverable based on promissory estoppel are not the profits that the promisee expected, but only the amount necessary to restore the injured party to the position he would have been in had he not acted in reliance on the promise. *Fretz Constr. Co. v. Southern Nat'l Bank of Houston*, 626 S.W.2d 478, 483 (Tex. 1981); *E.F. Hutton & Co. v. Fox*, 518 S.W.2d 849, 853 (Tex.Civ.App.-Dallas 1974, writ ref'd n.r.e.); *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 142 (Tex.App.—Houston [14 th Dist.] 1999, pet. denied).

McDavid asserts the trial court erred in granting summary judgment on the ground that it would not be unjust as a matter of law to refuse to enforce Subaru's oral promise. Subaru asserts McDavid could have protested the denial of permission before the TMVC and thus the trial court correctly concluded it would not be unjust to refuse to enforce Subaru's oral promise to allow McDavid to relocate the Dealership. We have already concluded that, under the facts of this case, McDavid was not required to first pursue its claim before the TMVC; therefore, Subaru has not shown that it would not be unjust as a matter of law to refuse to enforce its oral promise. Accordingly, we conclude the trial court erred in granting summary judgment on McDavid's promissory estoppel claim on this ground.

 McDavid next contends the trial court erred in granting summary judgment on its promissory estoppel claim on

the ground Subaru's promise was too vague as a matter of law to be enforced. McDavid argues that the summary judgment evidence shows the promise was definite in character: in deposition excerpts attached to Subaru's motions for summary judgment, and in his April 15, 1996 affidavit, David McDavid stated that Subaru made a definite promise to approve relocation of the Dealership. We conclude this evidence at least raised a fact issue that the promise was sufficiently definite to be enforced; therefore, Subaru did not prove as a matter of law that the alleged oral agreement was too vague to be enforced. Accordingly, the trial court erred in granting summary judgment on McDavid's promissory estoppel claim on this ground.

McDavid also claims the trial court erred in granting summary judgment on its promissory estoppel claim on the grounds that, as a matter of law, McDavid was not damaged by its reliance on the alleged promise. McDavid asserts the summary judgment evidence shows genuine issues of material fact exist with respect to whether it was damaged by Subaru's actions. We agree. Although Subaru's summary judgment evidence contains some evidence that McDavid may have benefitted from the relocation of its Oldsmobile dealership, the summary judgment evidence also includes David McDavid's April 15, 1996 affidavit in which he stated that he would not have relocated the Oldsmobile dealership and incurred over $350,000 in construction expenses preparing for that move if he had known Subaru was not going to allow relocation of the Dealership. This evidence raises a genuine issue of material fact as to whether McDavid was damaged by its reliance on Subaru's oral grant of permission to relocate the dealership. Accordingly, Subaru has failed to show as a matter of law that McDavid was not damaged; therefore, the trial court erred in granting summary judgment in favor of Subaru on McDavid's promissory estoppel claim on this ground.

Having concluded that Subaru failed to establish it was entitled to summary judgment as a matter of law on McDavid's promissory estoppel claim, we conclude the trial court erred in granting summary judgment on this claim. We sustain in part McDavid's second point of error.

**CONCLUSION**

For the reasons stated above, we affirm the trial court's summary judgment in favor of Subaru on McDavid's breach of written contract and DTPA causes of action. We reverse that portion of the trial court's order granting summary judgment in favor of Subaru on McDavid's breach of the duty of good faith and fair dealing, breach of oral contract, and promissory estoppel causes of action and remand those causes of action to the trial court for further proceedings.